[No. B098199. Second Dist., Div. One. Aug. 20, 1996.]

STOCKER RESOURCES, INC., Plaintiff and Appellant, v.
ASSESSMENT APPEALS BOARD OF LOS ANGELES COUNTY,
Defendant and Respondent.

## COUNSEL

Browne & Woods, Allan Browne, Allen B. Grodsky, Michael J. Olecki, Fulbright & Jaworski and Douglas W. Stern for Plaintiff and Appellant.

De Witt W. Clinton, County Counsel, and Halvor S. Melom, Principal Deputy County Counsel, for Defendant and Respondent.

## OPINION

**ORTEGA, J.**—Appellant Stocker Resources, Inc., applied for a reduction of real property tax assessments for fiscal tax year 1992-1993. Respondent

Assessment Appeals Board for the County of Los Angeles (the board) failed to hear Stocker's application within two years of its filing, believing Stocker had waived the two-year rule of Revenue and Taxation Code section 1604, subdivision (c)(1). That provision requires the board to adopt the taxpayer's opinion of market value, as reflected on the taxpayer's application for reduction in assessment, if the board fails to hear the matter within two years of the application's timely filing. When Stocker tried to claim the benefit of the two-year rule at its hearing, the board held that Stocker was estopped due to the intentionally misleading manner in which Stocker's attorney had modified the board's standardized waiver form. The superior court denied Stocker's petition for writ of mandate, and Stocker appealed. We affirm the order of denial.

## BACKGROUND

Stocker's application for reduction in assessed value, filed September 1, 1992, was set to be heard on September 1, 1994.[1] One or both of the parties wanted to continue the hearing. Numerous discussions occurred between the assessor's office and Stocker's attorney, Timothy R. Greenleaf, in July and August 1994, regarding a continuance. Greenleaf made it plain to the assessor's office that Stocker would not agree to a blanket waiver of the two-year rule, but would agree to a limited waiver until December 31, 1994. When advised that the board was then calendaring hearing dates for early January 1995, Greenleaf told the assessor's office that Stocker would agree to a limited waiver until February 15, 1995.

Shortly before the scheduled September 1, 1994, hearing date, Sandy Fore, the board's scheduling clerk, contacted Greenleaf's secretary, Jan

---

[1] The procedure for seeking a reduction in an assessment on the local roll is set forth in Revenue and Taxation Code section 1603 et seq. (Unless otherwise indicated, all further statutory references are to the Revenue and Taxation Code.) In some counties, the application is heard by the county board of supervisors meeting as a county board of equalization. (§ 1601, subd. (a).) In others, as in the County of Los Angeles, the board of supervisors "may by ordinance create assessment appeals boards for the county to equalize the valuation of taxable property within the county for the purpose of taxation." (§ 1620.)

The members of each county assessment appeals board may be "selected by lot by the presiding judge of the superior court of the county from among those persons nominated" by the county board of supervisors (§ 1622), or they may, by ordinance, be appointed directly by the county board of supervisors (§ 1622.1). The members serve a three-year term. (§ 1623.)

At a minimum, in counties with a population of one million or more, members of the county assessment appeals board must have at least "five years' professional experience in this state as one of the following: certified public accountant or public accountant, licensed real estate broker, attorney, or property appraiser accredited by a nationally recognized professional organization." (§ 1624.05.) Members may not have been employed by the assessor within the three years preceding their appointment to the assessment appeals board. (§ 1624.1.)

Dixon, while Greenleaf was away on vacation. According to Fore, she had called Greenleaf's office regarding Stocker's request to postpone the September 1 hearing. Fore testified that "we told them that in order to do that they would have to sign a waiver. And we always tell them that they are unconditional. . . ." Fore further stated that after she and Dixon had agreed to postpone the hearing until the week of February 20, 1995, she faxed Dixon a copy of the board's standardized blanket waiver form at Dixon's request.

While section 1604, subdivision (c)(1) states that "[t]he taxpayer and the county assessment appeals board [may] mutually agree in writing, or on the record, to an extension of time for the hearing,"[2] the board's practice is not to continue the hearing beyond two years unless the taxpayer agrees to an *indefinite* extension or a *blanket* waiver of the two-year rule. Form AB 1604-A is the board's standardized, one-page waiver form, printed on the board's letterhead with the county seal in the upper left-hand corner, by which the taxpayer agrees to postpone the hearing and have it rescheduled at an unspecified "future date," and "waives" the right under section 1604, subdivision (c) to have the application heard within two years. The form faxed to Greenleaf's office following his secretary's agreement to reschedule

[2]Section 1604, subdivision (c) states: "If the county assessment appeals board fails to hear evidence and fails to make a final determination on the application for reduction in assessment of property within two years of the timely filing of the application, the taxpayer's opinion of market value as reflected on the application for reduction in assessment shall be the value upon which taxes are to be levied for the tax year covered by the application, unless either of the following occurs:

"(1) The taxpayer and the county assessment appeals board mutually agree in writing, or on the record, to an extension of time for the hearing.

"(2) The application for reduction is consolidated for hearing with another application by the same taxpayer with respect to which an extension of time for the hearing has been granted pursuant to paragraph (1). In no case shall the application be consolidated without the taxpayer's written agreement after the two-year time period has passed or after an extension of the two-year time period previously agreed to by the taxpayer has expired.

"The reduction in assessment reflecting the taxpayer's opinion of market value shall not be made, however, until two years after the close of the filing period during which the timely application was filed. Further, this subdivision shall not apply to applications for reductions in assessments of property where the taxpayer has failed to provide full and complete information as required by law or where litigation is pending directly relating to the issues involved in the application. This subdivision is only applicable to applications filed on or after January 1, 1983."

Section 1604, subdivision (d) provides: "If, pursuant to subdivision (c), the applicant's opinion of value has been placed on the assessment roll, that value shall remain on the roll until the county board makes a final determination on the application. The value so determined by the county board, plus appropriate adjustments for the inflation factor, shall be entered on the assessment roll for the fiscal year in which the value is determined. No increased or escape taxes other than those required by a purchase, change in ownership, or new construction, or resulting from application of the inflation factor to the applicant's opinion of value shall be levied for the tax years during which the county board failed to act."

for the week of February 20, 1995, stated at the bottom that it was the "11/92" revision of "AB 1604-A."

When Greenleaf returned from vacation, he had Dixon tape a blank piece of paper over the text of the AB 1604-A waiver form and retype the waiver language with two substantive changes. In place of the original language, "*waives* his or her right to have the application(s) heard within a two-year period from the date of filing, . . . and agrees to be scheduled at a future date[,]" Greenleaf substituted the modified phrase, "*extends* his or her right to have the application(s) heard within a two-year period from the date of filing, . . . *through and including February 15, 1995* and agrees to be scheduled at a future date." (Italics added.) Greenleaf made these changes in order to limit the waiver of the two-year rule to February 15, 1995. Greenleaf made other typed changes to AB 1604-A, but they were not substantive.[3] (An exhibit depicting side-by-side photocopies of AB 1604-A in its original and altered states is reproduced as appendix A to this opinion.) Greenleaf signed the bottom of the altered form, faxed a copy to Fore, and sent a copy of the altered form to Ron Moeller of the assessor's office. Greenleaf's cover letter accompanying the altered form did not mention the alterations.

Fore did not notice the alterations to form AB 1604-A. Fore signed the bottom of the returned form, thinking that she was agreeing to the usual blanket waiver. In addition, Fore scheduled the hearing on Stocker's application for February 21, 1995 (which exceeded Greenleaf's limited waiver through February 15 of the two-year rule), pursuant to her oral agreement with Greenleaf's secretary.

In October 1994, the board mailed Greenleaf a notice of the February 21, 1995, hearing date, but Greenleaf did not notify the board that this would be beyond his limited waiver through February 15, 1995, of the two-year rule. Greenleaf waited until he appeared at the February 21 hearing to advise the board of its error and demand the benefit of the two-year rule for his client.[4]

The assessor's representative informed the board that he had not previously seen the altered form AB 1604-A, but that the question of waiver

[3] According to the uncontradicted assertion in Stocker's opening brief, the altered paragraph was in Courier typeface, whereas the original paragraph was in Times Roman. In addition, Stocker's brief points out "[t]here were other obvious modifications as well. For example, the thick black lines following the phrases 'Application No.' and 'Applicant' were removed [from the altered form]. In addition, the words 'see attached,' which were in all capital letters and located near the left margin on the Board['s] pre-printed form, were in lower case letters and centered on Stocker's modified form."

[4] According to the declaration of Afaf Assad, the board's chief, the difference between the assessor's assessed value and Stocker's valuation is $67,526,748. According to the board's opposition papers filed below, affording Stocker the benefit of the two-year rule in this case would amount to a tax refund of about $844,084.

was a matter between Greenleaf and the board, not the assessor. The representative demurred when asked by the board whether he wished to consult with county counsel on the issue of waiver.

Following a recess, Deputy County Counsel Albert Ramseyer, who was present at the board's request, called Fore as a witness.[5] Fore testified about her conversations with Greenleaf's secretary in August 1994, their agreement to postpone the hearing until the week of February 20, 1995, and her faxing of a copy of form AB 1604-A to Greenleaf's office after making that agreement. When Fore received the signed form AB 1604-A back from Greenleaf, she wrote "February 20th" on Greenleaf's accompanying cover letter "because that was about the time that we had agreed to make it, so that they could have that hearing time." Other than making sure that Greenleaf had signed the bottom of the waiver form, Fore did not read it. She explained that she had had no reason to believe that Greenleaf had altered the form, because neither Greenleaf's secretary nor Greenleaf's cover letter had mentioned any alterations.

Greenleaf was the next witness. He testified that while he was on vacation in August 1994, his secretary had notified him of Fore's request that he sign a waiver of the two-year rule. Greenleaf said he had told his secretary that he could not do so without speaking to his client. When Greenleaf returned from his vacation, his secretary retyped the waiver language, as previously indicated, at his direction. While Greenleaf admitted he had not specifically notified Fore or the board of the alterations, he also pointed out that "[at] no time did I or anyone else from my office ever give any assurances of an unlimited waiver. We have never done that." He further stated that when "[v]arious people from the Assessment Appeals Board staff called us and said, you know, we're just checking on where the waiver is[,] . . . I responded, [']we are having problems with the client, getting an unlimited waiver. They will only agree to a certain fixed period of time.[']" When questioned about his failure to mention the alterations to the form in his accompanying cover letter, Greenleaf replied, "I believe I was probably having a very busy day[.]"

---

[5]Section 1609.4 states: "On the hearing of the application, the county board may subpoena witnesses and books, records, maps, and documents and take evidence in relation to the inquiry. . . ."

Section 1609 provides: "The hearing need not be conducted according to technical rules relating to evidence and witnesses. Any relevant evidence may be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence over objection in civil actions. The applicant shall have the right to introduce evidence concerning the terms of sales of comparable property that has been sold."

Greenleaf, a tax attorney for 14 years in California, was then asked if he had ever been allowed by an assessment appeals board in this county to sign a modified waiver form. Greenleaf responded that in one other instance, he had been told that if he failed to sign the board's standardized blanket waiver form, his client would be precluded from presenting any testimony at the hearing. Greenleaf's testimony on this point was met with incredulity by the board chairman, who stated: "Mr. Greenleaf, I'm finding some difficulty following the training [*sic*] of what you have done. You have been told by a board unconditionally and according to your testimony and your paraphrasing it almost was threatened that you will not get a modified waiver. Yet you chose to assume by altering a form that was sent to you by a member of our staff, you chose to alter it to give you the opportunity to get a modified waiver that you have virtually been threatened that you will never get. [¶] Now I—it's just a little confusing to me why you would do that without making sure everyone understood exactly what it was you were doing."

The county counsel then asked Greenleaf why he did not inform the board of its error upon receiving notice of the February 21 hearing date in October 1994. Greenleaf responded, "It wasn't until after that—after the February 15th date as we were preparing for this as well that it was noticed. This was not an attempt to sandbag, as I keep repeating."

The board concluded that Greenleaf had intentionally misled the board by altering form AB 1604-A in a deceptive manner when he knew the board would not knowingly postpone the hearing without an unconditional waiver of the two-year rule. The board held that Stocker was estopped to claim the benefit of the two-year rule as a result of Greenleaf's intentionally misleading conduct. The board stayed the evidentiary hearing on the value of Stocker's property to permit a petition for writ of mandate (Code Civ. Proc., § 1094.5). This is an appeal from the order denying that petition.

## DISCUSSION[6]

■ Based on the evidence before the board, reasonable minds must agree that Fore lacked actual authority to sign the altered form AB 1604-A on behalf of the board, and that she was misled to believe the form she was signing had not been altered. Under these circumstances, we must conclude there was no mutual agreement (§ 1604, subd. (c)(1)) to waive the two-year rule only until February 15, 1995.

Given the board's failure to hear the application within two years of its filing, the question is whether Stocker should be estopped to claim the

---

[6]The parties disagree on the applicable standard of review on appeal. We need not discuss the matter, however, because under either the de novo or substantial evidence standard of review, we reach the same outcome.

benefit of section 1604, subdivision (c). We conclude that it should be estopped.

While this case appears to raise a matter of first impression before our state courts, a similar issue has been addressed in the federal tax court decisions cited by the parties to the court below. In those cases, the Internal Revenue Service (IRS) had asked the taxpayer to sign either consent form 872 or 872-A to waive the statute of limitations on the assessment of delinquent taxes. In each case, the taxpayer had altered the consent form, which the IRS signed without noticing the alternation. The rule to be gleaned from those cases is that when the taxpayer's subtle alteration to the waiver form is an attempt to mislead the IRS with regard to the date on which the limitations period shall expire, the taxpayer may be estopped to assert that date in its statute of limitations defense. (*Herschler* v. *Commissioner*, 48 T.C.M. (CCH) 1475 (1984).) But in the absence of an attempt to mislead the IRS, the IRS agent's negligent signing of the altered waiver form may bind the IRS to the date inserted by the taxpayer. (*Piarulle* v. *Commissioner*, 80 T.C. 1035 (1983); *Schenk* v. *Commissioner*, 35 T.C.M. (CCH) 1652 (1976).)

The federal tax court decisions have adopted the following requirements for the application of the doctrine of equitable estoppel: " '(1) there must be a false representation or wrongful misleading silence; (2) the error must originate in a statement of fact, not in opinion or a statement of law; (3) the one claiming the benefits of estoppel must not know the true facts; and (4) that same person must be adversely affected by the acts or statements of the one against whom an estoppel is claimed. [*Lignos* v. *United States* (2d Cir. 1971) 439 F.2d 1365, 1368.]' " (*Herschler* v. *Commissioner*, *supra*, 48 T.C.M. (CCH) 1475, 1478.)

In *Herschler*, the petitioner was a seasoned accountant of 25 years' experience who had represented clients in hundreds of IRS audits. The petitioner modified a form 872 by using a blue ball-point pen to scratch out one date and replace it with another, and he initialed the changes, which were duly noticed by the IRS agent who signed the form. Later, however, the petitioner had his wife modify a subsequent form 872 by carefully retyping the date, but only in the text, leaving the original date unaltered at the top of each page. This time, the petitioner did not call the modifications to the attention of the IRS, and the alteration went unnoticed by the IRS agent who signed the form. The tax court held that the elements of estoppel were present because: (1) the carefully typed modification of the date in the text but not at the top of each page was intended to mislead the IRS to rely on the original date; (2) the error originated in a statement of fact (the original date at the top of each page), not in opinion or a statement of law; (3) the IRS

reasonably relied to its detriment on the assumption that the taxpayer had agreed to extend the statute of limitations to the original date, and (4) the IRS was adversely affected by the petitioner's actions.

Here, reasonable minds must agree either that Greenleaf's subtle alterations to the waiver form were intended to mislead the clerk and the board, or that Greenleaf's failure to notify the board of its mistake prior to the February 15 deadline was a wrongful misleading silence. Instead of changing the form by interlineation and initialing the changes in the margin, which would have been far more obvious, Greenleaf buried the modifications within the retyped paragraph. Despite the different typeface and other non-substantive changes made to the altered form, it still bore a strong resemblance to form AB 1604-A. It was on the board's letterhead, it had the county seal, and it stated at the bottom that it was the "11/92" revision of form AB 1604-A.

From his prior experience with another assessment appeals board in this county, we infer that Greenleaf knew that if the alterations were called to the clerk's attention in this case, she would not sign the form on behalf of the board. We conclude Greenleaf was aware that the board required a blanket waiver in order to extend the hearing date. Moreover, Greenleaf waived the two-year rule only until February 15, when his secretary had agreed with the clerk that the hearing could commence during the week of February 20. When Greenleaf received notice in October of the February 21 hearing date, he stayed silent about the discrepancy until after his limited waiver of the two-year rule had expired. The evidence of deception is so strong we must infer that Greenleaf was manipulating events so that the board would be forced to adopt his client's opinion of market value under section 1604, subdivision (c).

These facts are more egregious than those in *Herschler*, and they clearly satisfy the requirements of estoppel: (1) the typed alterations to the form were made in an attempt to mislead the clerk, (2) the error originated in a statement of fact (the subtle alterations resulted in a false representation that the document was the 1992 revision of form AB 1604-A), not in opinion or a statement of law; (3) the board reasonably relied to its detriment on the reasonable assumption that the taxpayer had agreed to a blanket waiver, and (4) the board was adversely affected by Greenleaf's actions.

We are not persuaded by Stocker's contention that the board was not adversely affected by Greenleaf's alleged deception. Stocker's brief on appeal states that as "a neutral judicial body, *with no vested interest in what happens on the tax appeal* and with no stake in seeing a particular party

prevail[,] [t]he Board would suffer no detriment if Stocker prevailed due to the failure to set the hearing before the agreed-upon deadline. Case law is clear that a party cannot seek estoppel if it was not hurt: the party seeking estoppel 'must rely on the conduct *to his injury*.' [Citation.] Because the Board is not Stocker's adversary, and therefore could not (and did not) suffer any injury, the Board has no standing to seek estoppel." (Fns. omitted.)

Our response is that the board is not a passive arbiter. The board is authorized to "subpoena witnesses and books, records, maps, and documents and take evidence in relation to the inquiry. . . ." (§ 1609.4.) This is a departure from the manner in which trials are normally conducted, but these hearings need not be conducted "according to technical rules relating to evidence and witnesses." (§ 1609.) The board, accordingly, is a fact finder in the active sense of the word. If required to adopt the opinion of market value reflected in Stocker's application for reduction in assessment, the board's factfinding powers would be wrongfully circumscribed as a result of Greenleaf's deception.

We further note that the board rescheduled the hearing for February 21, 1995, as Greenleaf's secretary requested, only six days after Greenleaf's limited waiver had expired. This six-day delay did not "cast [Stocker] into a bureaucratic limbo where there is no light at the end of the administrative tunnel." (*Shell Western E & P, Inc.* v. *County of Lake* (1990) 224 Cal.App.3d 974, 984-985 [274 Cal.Rptr. 313].) This is not a case where unreasonable delay caused by the board warrants the relief required by section 1604, subdivision (c).

## DISPOSITION

We affirm the order denying the petition for writ of mandate. Respondent is awarded costs on appeal.

Spencer, P. J., and Masterson, J., concurred.

APPENDIX A

ASSESSMENT APPEALS BOARDS
COUNTY OF LOS ANGELES
500 HALL OF ADMINISTRATION / LOS ANGELES, CALIFORNIA 90012
(213) 974-1471

WAIVER

AGREEMENT FOR POSTPONEMENT OF
HEARING ON ASSESSMENT APPEALS APPLICATION

Application No. 9217101

Applicant Stocker Resources Inc.

the person affected by the assessment(s) on the following property described by the
Assessor's Parcel/Bill Number(s):

\*SEE ATTACHED

agrees to a postponement of hearing and hereby waives his or her right to have the
application(s) heard within a two-year period from the date of filing, in accordance with
the State of California Revenue and Taxation Code, Section 1604, Subdivision (a) and
agrees to be scheduled at a future date.

Sign Here _____

Print Name and Title _____

Date _____

The Assessment Appeals Board agrees to the postponement of hearing and the Clerk will
set the application for hearing at a later date and notify the applicant or his or her agent
in writing no less than ten days prior to the hearing.

_____
Date

_____
Deputy Clerk

NOV 12 1993

---

ASSESSMENT APPEALS BOARDS
COUNTY OF LOS ANGELES
500 HALL OF ADMINISTRATION / LOS ANGELES, CALIFORNIA 90012
(213) 974-1471

WAIVER

AGREEMENT FOR POSTPONEMENT OF
HEARING ON ASSESSMENT APPEALS APPLICATION

Application No. 9217101

Applicant STOCKER RESOURCES INC.

the person affected by the assessment(s) on the following property described by the
Assessor's Parcel/Bill Number(s):

see attached

agrees to a postponement of hearing and hereby extends his or her
right to have the application(s) heard within a two-year period
from the date of filing, in accordance with the State of California
Revenue and Taxation Code, Section 1604, Subdivision (a), through
and including February 15, 1995 and agrees to be scheduled at a
future date.

Sign Here _____

Timothy R. Gonzales G. Attorney
Print Name and Title

08/30/94
Date

The Assessment Appeals Board agrees to the postponement of hearing and the Clerk will
set the application for hearing at a later date and notify the applicant or his or her agent
in writing no less than ten days prior to the hearing.

8-31-94
Date

Andre M. Tu
Deputy Clerk