[No. B164607. Second Dist., Div. Eight. July 29, 2004.]

HELENE CURTIS, INC., Plaintiff and Appellant, v.
LOS ANGELES COUNTY ASSESSMENT APPEALS BOARDS,
Defendants and Respondents;
LOS ANGELES COUNTY BOARD OF SUPERVISORS, Real Party in
Interest and Respondent.

## Counsel

Gangloff, Gangloff & Pool, Robert A. Pool and David L. Gangloff, Jr., for Plaintiff and Appellant.

Lloyd W. Pellman, County Counsel, and Nancy M. Takade, Deputy County Counsel, for Defendants and Respondents and for Real Party in Interest and Respondent.

## Opinion

**COOPER, P. J.**—This appeal is from a judgment denying a petition for a writ of mandate, to require the Los Angeles County Assessment Appeals Boards (board)[1] to (1) set aside the denial of petitioner Helene Curtis, Inc.'s (Curtis) 1997 application for reduction of property tax assessment, (2) hold a hearing on that application, and (3) enroll Curtis's opinion of market value, because of the board's failure to determine the application within two years after its filing (Rev. & Tax. Code, section 1604, subds. (c), (d)).[2] The trial court denied the petition, principally on grounds Curtis was estopped from claiming the benefits of subdivision (c). Although we agree with that

---

[1] Three assessment appeals boards took action in the underlying matter. We refer to them individually and collectively as the board.

[2] Undesignated section references herein are to the Revenue and Taxation Code. Section 1604, subdivision (c) of that code is referred to as subdivision (c). California Code of Regulations, title 18, section 301 et seq., which constitute regulations for county equalization board hearings, are cited by section number as "rules." The board's own published rules are cited as "local rules." Unless indicated, references to the foregoing are to versions that were in effect during the administrative proceedings under review.

conclusion, we also conclude that Curtis is entitled to a board hearing on the merits of its application. We therefore reverse the judgment and direct the issuance of a limited writ of mandate, requiring the board to determine Curtis's application on its merits.

## FACTS

The backdrop of the contest in this case is subdivision (c), which relevantly provides: "If the county assessment appeals board fails to hear evidence and fails to make a final determination on the application for reduction in assessment of property within two years of the timely filing of the application, the taxpayer's opinion of market value as reflected on the application for reduction in assessment shall be the value upon which taxes are to be levied for the tax year covered by the application, unless . . . [¶] (1) The taxpayer and the county assessment appeals board mutually agree in writing, or on the record, to an extension of time for the hearing."

On September 12, 1997, Curtis filed an application for reduction of the 1997 property tax assessment of certain business personal property and fixtures. A year and a half later, in March 1999, the board notified Curtis that the application would be heard on June 3, 1999. On that date, Linda Offringa, of Property Tax Assistance Co., Inc. (PTA), appeared as Curtis's representative. The board's chair initially recognized PTA as "the authorized agent." However, during ensuing argument regarding Curtis's request for a continuance, the chair observed that Curtis's application had been filed by Attorney David L. Gangloff, Jr., and Curtis had not authorized PTA as its agent on the application form. Offringa responded that she had presented an authorization to the clerk that morning. Curtis had executed this "Authorization of Tax Agent," naming PTA, on a board form on January 31, 1997. After a brief adjournment, the chair recognized the clerk, who advised the board that because Curtis's authorization of PTA had been executed "prior to the filing of the application form . . . Mr. Gangloff would have to be present this morning in order for us to go forward." Accordingly, the clerk concluded that "the application would have to be denied due to nonappearance." With the concurrence of another board member, the chair so ordered.[3]

Under rule 313(g) and local rule 26, this denial for nonappearance (or "no-show") was subject to reconsideration, upon request filed within 60 days after mailing of notice of the denial. Although such notice was sent to Curtis

---

[3] Offringa twice responded to the clerk's remarks with the word, "Understandable." We do not consider these utterances to be either an admission or waiver by Curtis.

and to Gangloff on June 9, 1999, Curtis did not proceed to request reconsideration, through a one-paragraph letter by Gangloff, until September 1, 1999, 84 days after the notice, and 11 days before expiration of the two-year period under subdivision (c).

On October 1, 1999, the two-year period having expired, the board responded with a letter to the effect that the request for reinstatement of Curtis's application would not be considered unless a waiver of the two-year period were signed and returned. The board directed and sent this letter not to Gangloff but to PTA—an act inconsistent with the board's previous refusal to recognize PTA as Curtis's representative in the proceedings. An enclosed form provided that Curtis agreed to waive its entitlement under subdivision (c) to have its application heard and decided within two years of filing, and gave the board a further 180 days to hear and decide the application.

Curtis's representatives did not sign or return the waiver form. Apparently assuming they had, the board on October 14, 1999, notified Gangloff that it would hear Curtis's request for reinstatement, on November 19, 1999. Gangloff and Offringa appeared at the hearing. The board ordered the application reinstated, based on Gangloff's presence, but advised him that at future hearings a current rather than preapplication authorization should be submitted.

Following a recess, the board took up the matter of a subdivision (c) waiver. The chair informed Gangloff that a waiver would be necessary to evaluate the application. Gangloff replied, "I'm sorry, I've talked to my client about this . . . but we just lost a case in the Court of Appeal for [Curtis] on a very technical ground and my client will not authorize a waiver."[4]

In a following colloquy, the board chair responded: "[O]ur situation today stems from the fact that in order for us to continue an application it's a practice to ask to have a waiver in place. [¶] And it appears to me that you came in this board room with that determination already made that you were not going to sign a waiver. If we ha[d] known this, what your intention was, we would not have taken this action to continue this application because we cannot, we will not continue an application to be heard when it's been passed the statute of limitation." Gangloff responded that "a waiver is completely and utterly irrelevant to the reinstatement of an application," and argued that the board was asking Curtis to "give up their rights to get due process." The chair replied that the board had "acted in good faith this morning. Apparently you came in with your mind set already that you were not going to sign a

---

[4] The admittedly "unrelated matter" to which Gangloff referred was *Helene Curtis, Inc. v. Assessment Appeals Bd.* (1999) 76 Cal.App.4th 124 [90 Cal.Rptr.2d 31].

waiver . . . ." Gangloff told the chair, "[Y]ou are absolutely correct when you say we have not signed a waiver, we had no intention of signing a waiver. I had already spoken to my client about that possibility and they basically said absolutely not." The chair replied, "Well, that's the unfortunate misunderstanding we had here, that if we would have known your intentions, we would absolutely not have continued the application."

The board proceeded to adjourn the matter for a "default hearing," in the words of an officer, "to see if it stops here or if the [applicant's] opinion of value would be read in." The officer advised the board that Curtis's application had been reinstated. On December 27, 1999, the board sent a letter to Gangloff stating that it had set a hearing on the application, "based on" subdivision (c), for January 28, 2000.

At that hearing, Gangloff acknowledged that Curtis would have given a waiver had its June 3, 1999 request for a continuance been granted. The chair suggested that Gangloff now provide such a waiver, but he replied that because of the previous, unconnected litigation, Curtis had not authorized him to, and instead intended to stand on its rights. The chair pointed out that the board's October 1, 1999 letter had stated that a waiver was a precondition to considering reinstatement; Gangloff replied that he did not agree this was a legal requirement.

After a recess, the board stated that it intended to nullify its reinstatement of the application, because it did not believe reinstatement could be granted after expiration, and without a waiver, of "the two year statute." Expressing a desire, however, that Curtis receive a merits hearing, the board invited Gangloff to obtain authority to waive the statute, given which the board would again reinstate the application. After an adjournment to consult with Curtis, Gangloff announced that Curtis would not sign a waiver, for fear "it will hurt any litigation position that we might have . . . ." The board then ruled that the decision to reinstate the application had been made without authority, was null and void, and therefore the denial of June 3, 1999, remained the board's decision.

Two and one-half years later, on June 26, 2002, Curtis filed a petition for writ of mandate against the board, purportedly under Code of Civil Procedure section 1085, with a request for attorney fees, under Government Code section 800. After averring that Curtis had in the interim filed a refund application, which had not been acted on, the petition alleged that the board had improperly failed to enroll Curtis's estimate of value after the expiration of two years following the reassessment application (subd. (c)), and had unlawfully rescinded its November 19, 1999 reinstatement order. Curtis prayed that the board's June 1999 and January 2000 decisions be set aside,

that the board order an equalization hearing under section 1604, subdivision (b), and that it order enrolled as the assessed value, for all intervening years, Curtis's opinion of value expressed in its 1997 application, in accordance with subdivision (c) and section 1604, subdivision (d).[5] With the petition, Curtis filed a declaration by Gangloff, identifying and attaching copies of transcripts and documents from the board's files, and narrating the events and proceedings reflected. Curtis also filed a declaration by Offringa, affirming her and PTA's agency for Curtis, describing other instances in which PTA was recognized by the board, and outlining the proceedings of June 3, 1999.

Curtis moved for a peremptory writ of mandate. With its opposition, the board[6] filed a declaration by an officer, attaching and authenticating various documents from the file of Curtis's application, and stating that one of the documents filed with Gangloff's declaration—a 1992 authorization of PTA by Curtis—did not appear in that file. In addition, the board requested judicial notice of certain of the rules and local rules, as applicable in the period surrounding the administrative proceedings.[7]

The trial court first ruled that the proceeding was governed by Code of Civil Procedure section 1094.5 (administrative mandamus) rather than section 1085 (ordinary mandamus), and therefore evidence outside the administrative record could not be considered, unless it qualified under subdivision (e) of Code of Civil Procedure section 1094.5. On this basis, the court received in evidence only the exhibits to Gangloff's declaration, excluding the 1992 authorization, and those attached to the board's officer's declaration.

The court then rejected Curtis's ultimate contention, that it was entitled to enrollment of its estimate of value under subdivision (c), for several reasons. First, the court held, the board had heard and determined Curtis's application

---

[5] Pursuant to section 1604, subdivision (d), Curtis further prayed that this value remain on the roll for succeeding tax years, until the board rendered a final determination of the application.

[6] The Los Angeles County Board of Supervisors, which Curtis named as real party in interest, appeared by county counsel together with the board. (See *FlightSafety Internat., Inc. v. Los Angeles County Assessment Appeals Bd.* (2003) 105 Cal.App.4th 620, 629, fn. 13 [129 Cal.Rptr.2d 539] (*FlightSafety*).)

[7] Presently, Curtis has filed a one-inch-thick motion for judicial notice, requesting that we notice various editions of the rules and local rules, notices of action by the State Board of Equalization, a recommendation to the board of supervisors, and two excerpts from scholarly texts. Although this material might qualify for judicial notice, Curtis's motion critically fails to explain the purpose and relevance of the nine items of proferred evidence. References to some of them in Curtis's briefs, without citation to the motion, do not substantially clarify the matter. We therefore deny the motion for judicial notice, for failure to show relevance. This denial is without prejudice, in that we have examined some of the appended matters in the course of decision.

on June 3, 1999, less than two years after its filing. Second, the court ruled that Curtis was estopped to claim the benefit of subdivision (c), because, as in *Stocker Resources, Inc. v. Assessment Appeals Bd.* (1996) 49 Cal.App.4th 391 [57 Cal.Rptr.2d 28] (*Stocker*), it had misled the board to believe that the waiver the board required had been provided.

## DISCUSSION

Curtis first claims error in the trial court's exclusion of Curtis's declarations and the 1992 authorization of PTA. Curtis contends that its writ petition should have been treated as one in ordinary mandamus, or alternatively that the excluded evidence warranted admission in administrative mandamus, under Code of Civil Procedure section 1094.5, subdivision (e). The trial court, however, correctly discerned that Code of Civil Procedure section 1094.5 governed the case, inasmuch as it sought review of a proceeding that required a hearing, the taking of evidence, and discretionary administrative determination of facts. (*Id.*, subd. (a).) In such cases Code of Civil Procedure section 1094.5 applies whether or not a hearing actually was held. (*Pomona College v. Superior Court* (1996) 45 Cal.App.4th 1716, 1727, 1729 [53 Cal.Rptr.2d 662]; see *Kirkpatrick v. City of Oceanside* (1991) 232 Cal.App.3d 267, 279 [283 Cal.Rptr. 191].)

Nor did the court exceed its discretion by limiting the evidence to the administrative record. Code of Civil Procedure section 1094.5, subdivision (e), on which Curtis relies, permits consideration of relevant evidence that either was improperly excluded by the administrative agency or could not with reasonable diligence be produced before it. The subdivision "opens a narrow, discretionary window for additional evidence . . . ." (*Fort Mojave Indian Tribe v. Department of Health Services* (1995) 38 Cal.App.4th 1574, 1595 [45 Cal.Rptr.2d 822].) Curtis's declarations of Gangloff and Offringa, which summarized and characterized the proceedings that the record reflected, were redundant and did not require addition to the record. And Curtis's 1992 authorization of PTA, which apparently had been filed with the board separately from and before these proceedings, also was superfluous, because it did not enhance the showing of PTA's agency made by the 1997 authorization that Offringa presented to the board on June 3, 1999.

Curtis next contends that the proof-of-agency requirements that the board applied when it ruled that Offringa could not represent Curtis on June 3, 1999, were unlawful, because, without statutory authorization, they conflicted with the Civil Code's requirements for authorization of an agent. This contest of the board's June 3, 1999 decision is unfounded.

The board ruled that PTA and Offringa's written authorization did not qualify them to represent Curtis at the June 3, 1999 hearing because that

authorization had been given (executed) by Curtis before the instant application was filed by Gangloff—specifically, in January 1997, almost nine months preceding that filing. This sequence rendered the authorization defective in several respects. First, the authorization form itself, apparently prepared by the county, recited that *"This form may only be used for an Assessment Appeal by a taxpayer who has already filed an application."* That this meant the authorization had to be given after filing of the application was made clear by the printed text of the authorization, which required that a copy of the application in question be attached to it.

The authorization form, in turn, implemented rule 317, which provides that an applicant may be represented at the assessment hearing by an agent, but that "Any person, other than an attorney at law, purporting to act as an agent for the applicant shall prior to the hearing file with the clerk written authority, signed by the applicant, to represent the applicant *at the hearing*." (Italics added.) (Officers and employees of corporate taxpayers, and spouses, parents, and children of individual taxpayers are exempted from this requirement.) (Rules 317, 320.) The pre-application authorization that Offringa presented on June 3, 1999 did not and could not comply.[8]

■ Curtis's position is that the requirement of written authorization to appear at a hearing conflicts with Civil Code section 2309, which provides, with regard to an agent's authority, that "An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing." We do not perceive a conflict. Civil Code section 2309 concerns the form of authorization sufficient to empower an agent to act for a principal. The board's requirements of filed written authorization do not define or restrict how such authority may be created. Rather, they provide for notification or proof of authority, to satisfy the board that a nonlawyer representative who purports to appear for the taxpayer at a hearing, and who is not an employee (of a corporate taxpayer) or a close relative (of an individual taxpayer), has been empowered to do so. Such specific and convenient proof subserves the legislative and administrative scheme, under which the agent must be "thoroughly familiar" with the facts (rule 317), and will generally be examined by the board (§ 1607). It also ensures, as the trial court noted, that board proceedings will not be disrupted by postdecision protests that the agent who participated was not authorized to do so. These considerations refute Curtis's correlative arguments that rule 317 and local rule 17 exceed the regulatory

---

[8] As of July 23, 1997, local rule 17 further required that "If the application was filed by a person other than the applicant, the written authorization signed by the applicant shall also indicate the applicant's consent to the change in representation." It is not clear whether the local rule contained this requirement on June 3, 1999.

authority of the State Board of Equalization and the board. (See *Helene Curtis, Inc. v. Assessment Appeals Bd., supra,* 76 Cal.App.4th at pp. 129–130.)

Nor is the board's June 3, 1999 action impaired because the board recognized PTA as Curtis's agent in other contexts, such as mailing the waiver form and notice to PTA on October 1, 1999, and answering the petition for mandate (which admitted that Offringa was "an employee of CURTIS's agent, Property Tax Assistance Co., Inc. . . ."). It was not inconsistent for the board to treat PTA as Curtis's agent, but also to require that Offringa supply the form of authorization specifically required in order to participate in the hearing. By doing so, the board acted not to negate PTA's authority, but only to assure itself, as prescribed, that PTA, which had not filed the application, was now authorized to pursue it.

Even if the board's June 1999 decision based on Curtis's nonappearance had been improper, the rules provided Curtis with a ready remedy, through a request for reinstatement, under rule 326 and local rule 26. Curtis was bound to exhaust that administrative remedy, as a jurisdictional precondition to seeking judicial relief. And Curtis did. Although its request for reinstatement was filed 24 days beyond the 60-day period fixed by the rules, the board not only entertained the request but granted it. However, as previously described, when the board ascertained that Curtis had not and would not waive the two-year provision of subdivision (c), the board nullified the reinstatement. The trial court subsequently approved this disposition, holding that Curtis was estopped to claim to invoke subdivision (c). Before reviewing this ruling, we must assess the validity of the board's underlying revocation of its reinstatement order.

Curtis contends that the November 1999 ruling granting it reinstatement was final when made, and not legally subject to revocation. For this proposition Curtis first cites rules 325(a)(1), which specifies when the board's "decision" becomes final, and 326, which provides that "The decision of the board upon an application is final," and not subject to reconsideration, rehearing, or modification, unless it reflects a ministerial clerical error, or it was entered because of a failure to appear (as occurred on June 3, 1999). These rules, however, concern the decision on the application itself. They do not in terms cover intermediate procedural decisions, such as reinstatement.

Curtis also relies on the general doctrine that unless permitted by statute, an administrative agency may not reopen or reconsider an adjudicative decision. (*Gutierrez v. Board of Retirement* (1998) 62 Cal.App.4th 745, 749, fn. 3 [72 Cal.Rptr.2d 837].) But this rule does not preclude an agency from rescinding a decision that exceeded its jurisdiction. "In such a case, the power

to act legally has not been exercised, the doing of the void act is a nullity, and the board still has unexercised power to proceed . . . ." (*Aylward v. State Board etc. Examiners* (1948) 31 Cal.2d 833, 839 [192 P.2d 929]; see also *Ferdig v. State Personnel Board* (1969) 71 Cal.2d 96, 104 [77 Cal.Rptr. 224, 453 P.2d 728].)

In this case, the board purported to act under the authority just summarized: it nullified its grant of reinstatement on grounds it had been unauthorized, because the board did not have power to grant reinstatement after the unwaived expiration of subdivision (c)'s two-year period. But we find this view to be unsupported. Although the board clearly was unwilling as a matter of policy to afford reinstatement without a waiver after expiration of the two-year period, there appears no bar in the statutory scheme to its doing so.

■ Thus, rule 326 and the board's local rule 26, which provide for reinstatement of an application after a "no-show" denial, say nothing about the two-year period. More affirmatively, section 1604, subdivision (d) recognizes that the board remains empowered to decide the application after expiration of the two years. The statute provides that the default, taxpayer valuation, triggered under subdivision (c) by the expiration of two years without decision, shall remain on the roll "*until the county board makes a final decision on the application.*" (Italics added.) Then, "[t]he value so determined by the county board . . . shall be entered on the assessment roll for the fiscal year in which the value is determined." (§ 1604, subd. (d).) If the board is thus authorized (if not indeed mandated) to determine an assessment application after the expiration of two years from its filing, surely it may take the preliminary step of reinstating an untimely truncated application during that period, enabling its determination.

■ In this connection, subdivision (c)'s two-year period is not a "limitation," except upon the board's power to impose a different valuation than the applicant's until the board decides the application for reduction. Expiration of the period does not prevent the board from acting on an application in the manner of a statute of limitations. Rather, it operates as a milestone to encourage completion of the process.

Accordingly, the board's grant of reinstatement to Curtis, given after the two-year period (under the misapprehension that Curtis had waived that time) was authorized, and the board's purported revocation of it was improper. This does not mean, however, that Curtis is entitled to a windfall of receiving its own ascribed valuation, under subdivision (c). That is precluded by estoppel, as the trial court properly recognized.

The trial court's decision as to estoppel was based on *Stocker, supra,* 49 Cal.App.4th 391, which the court regarded as materially indistinguishable

from the present case. In *Stocker,* the hearing on Stocker's reassessment application was scheduled to be held on September 1, 1994, exactly two years after filing. The board's practice was to require a blanket waiver of the two-year limit of subdivision (c) before it would continue a hearing beyond the two years. In contemplation of a continuance, Stocker's attorney, Greenleaf, stated that Stocker would not agree to a blanket waiver, but would give one until February 15, 1995. Thereafter, the board's scheduling clerk and Greenleaf's secretary (Greenleaf being on vacation) agreed the hearing would be postponed to the week of February 20, 1995. The clerk also told the secretary that this would require an unconditional waiver, and faxed over the board's waiver form.

As in the present case, the board's form provided for a general waiver. However, Greenleaf and his secretary modified and retyped the waiver language, to provide for an "exten[sion]" of the two-year period "through and including February 15, 1995 . . . ." (*Stocker, supra,* 49 Cal.App.4th at p. 395, italics omitted.) Greenleaf returned the form to the board without mentioning the alterations. Not noticing them, the board's clerk signed the form, and rescheduled the hearing for February 21, 1995. Greenleaf did not inform the board that this date exceeded his waiver, until he appeared on February 21 "and demand[ed] the benefit of the two-year rule for his client." (*Ibid.*)

At that hearing, the clerk testified she had signed the form without reading it; she had not suspected it had been altered, as she had not been so apprised by Greenleaf's cover letter. Greenleaf acknowledged he had given only a limited waiver, because his client would not agree to a general one. The board concluded that Greenleaf had intentionally misled it, aware that it would not knowingly postpone the hearing without an unconditional waiver of the two-year rule. The board therefore held that Stocker was estopped to claim the benefit of subdivision (c). Stocker filed a petition for writ of mandate, which was denied.

On appeal, the court agreed that "Stocker should be estopped to claim the benefit of section 1604, subdivision (c)." (*Stocker, supra,* 49 Cal.App.4th at pp. 397–398.) The court applied doctrine from decisions of the United States Tax Court, to the effect that estoppel may arise from a false representation or a " ' "wrongful misleading silence," ' " regarding a matter of fact, as to which " ' "the one claiming the benefits of estoppel must not know the true facts . . . ." ' " (*Id.* at p. 398.) Here, the court found, "Greenleaf's failure to notify the board of its mistake prior to the February 15 deadline was a wrongful misleading silence," inasmuch as he knew "that the board required a blanket waiver in order to extend the hearing date," but stayed silent until his limited waiver had expired. (*Id.* at p. 399.)

We agree with the trial court that the principles applied in *Stocker, supra,* 49 Cal.App.4th 391, require the same result in the present case. Curtis was expressly notified that the board required a waiver of subdivision (c)'s two-year period in order to consider reinstating the application following the passage of that period. Curtis withheld the waiver, and when the board mistakenly proceeded to notice and hold a reinstatement hearing, Curtis, although knowing that a waiver would be a matter of integral concern, did not apprise the board it had refused and withheld one until reinstatement had been granted. At that point, having had its previously defunct application revived, Curtis insisted on the fruits of its nonwaiver, namely automatic enrollment of value under subdivision (c). As in *Stocker,* these facts manifest a "wrongful misleading silence" by Curtis with respect to its failure to satisfy the board's conditions for reinstatement, as well as ignorance by the board of that refusal, justifying recognition of an estoppel to claim the benefits of subdivision (c).

Curtis's arguments against this result are unavailing. Curtis argues the board was not ignorant of the lack of waiver, because the board's own files reflected it. But the same could have been said in *Stocker, supra,* 49 Cal.App.4th 391, in which the limited waiver had been filed, and the clerk admitted not reading it. In *Cal. Cigarette Concessions v. City of L. A.* (1960) 53 Cal.2d 865, 870 [3 Cal.Rptr. 675, 350 P.2d 715], there was no misunderstanding of facts, only a unilateral assumption about future conduct that the party sought to be estopped could not control. And our decision in *FlightSafety, supra,* 105 Cal.App.4th 620, 628, also is inapposite. There we stated that the taxpayer had no duty to suggest to the board the applicability of a controlling statute. That is quite different from knowingly misleading the board, by calculated silence, about one's own failure to perform a critical act, which the board expected would be done.

■ We therefore conclude that although the board improperly nullified its reinstatement of Curtis's application, the trial court properly held Curtis estopped from claiming the operation and benefits of subdivision (c) (and therefore section 1604, subdivision (d)) with respect to the application. In short, Curtis is entitled to a hearing on the actual merits of its application, no more and no less. Our judgment will direct the trial court to grant a writ to that effect.[9]

---

[9] Although Curtis has not pressed its prayer for attorney fees here, had it done so they would have been denied, because the board's conduct did not qualify for such an award.

## DISPOSITION

The judgment is reversed, with directions to enter a judgment granting a writ of mandate, requiring the board to set aside its January 28, 2000 decision nullifying its reinstatement of Curtis's application, and to proceed to determine that application on the merits, in conformity with this decision. The parties shall bear their own costs.

Rubin, J., and Boland, J., concurred.

A petition for a rehearing was denied August 30, 2004.