Filed 4/3/13  Gilray v. Cambria Com. Services Dist. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JOHN F. GILRAY et al., <br><br>    Plaintiffs and Appellants, <br><br> v. <br><br> CAMBRIA COMMUNITY SERVICES DISTRICT, <br><br>    Defendant and Respondent. | 2d Civil No. B239158 <br> (Super. Ct. No. CV118265A) <br> (San Luis Obispo County) |

Property owners petitioned for a writ of mandate and administrative mandate to compel a community services district to act on their applications for a service review and for sewer service.  They also included a cause of action alleging a taking of their properties.

The trial court sustained the district's demurrer without leave to amend. The court concluded the district had no duty to conduct a piecemeal service review or to hold a hearing on a petition for sewer service without water service.  It also concluded the takings claim is not ripe for adjudication.  We affirm.

FACTS

John F. Gilray, Donald C. Berry and Mary E. Craighead (collectively Gilray) own individual parcels of undeveloped property in Cambria.  Cambria is an

unincorporated area in San Luis Obispo County (County). The Cambria Community Services District (District) is responsible for providing services to the area, including water and sewer services.

Gilray filed a petition against the District for writ of mandate, writ of administrative mandate and for damages in inverse condemnation. The petition alleges: Gilray has paid special assessments to fund and operate the District's sewage treatment plant, but has never received sewer service. Gilray has applied to the District for public service review and for sewer service, but the District has refused to accept or process either application. The District has failed to point out any incompleteness in the applications and they are deemed complete pursuant to Government Code section 65943, subdivision (a).[1] The District has sufficient sewage capacity to serve Gilray's parcel.

Gilray requested that the trial court order the District to conduct a service review and grant his application for sewer services, or pay just compensation for taking his property. Gilray did not attach copies of the applications to his petition.

The district demurred to the petition on the ground it has no legal duty to consider Gilray's application.

DISCUSSION

I

The function of a demurrer is to test the sufficiency of a pleading by raising questions of law. (*Postley v. Harvey* (1984) 153 Cal.App.3d 280, 286.) In reviewing the sufficiency of a demurrer, we deem all facts pled in the complaint to be true. (*Holland v. Thacher* (1988) 199 Cal.App.3d 924, 928.) But we do not assume the truth of contentions, deductions or conclusions of fact or law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) If upon consideration of all the facts alleged or of which the court has taken judicial notice the plaintiff is entitled to any relief, the complaint will be held good. (*Chase Chemical Co. v. Hartford Accident Indemnity Co.* (1984) 159 Cal.App.3d 229, 242.)

---

[1] All statutory references are to the Government Code unless stated otherwise.

## II

Gilray contends the District has a mandatory duty to accept and process his applications.

California Code of Civil Procedure section 1085, subdivision (a) provides in part:  "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . ."

To obtain a writ of mandate, petitioner must show a clear and present ministerial duty on the part of respondent and a clear and present beneficial right to the performance of that duty in the petitioner.  (*Santa Clara County Counsel Attorneys Assoc. v. Woodside* (1994) 7 Cal.4th 525, 539-540.)

Gilray argues that the District's mandatory duties can be found in the County's master water plan, specifically in the public services and utilities (PSU) and the community wide (CW) measures.

PSU-3 provides:  "Prior to submittal of land use and building permit applications to San Luis Obispo County, the [District] shall review the development applications to ensure that police, schools, parks/recreation, and solid waste facilities, services, and resources are adequate to support the increased demands associated with new development."

PSU-5 requires the District to comply with CW-8.  CW-8 provides in part: "Prior to application acceptance, land use and building permit applications shall include a written verification of water and sewer service from the Cambria Community Services District."

Gilray's application to the District is limited to sewer service.  Nothing in PSU-3 or CW-8 requires the District to conduct a piecemeal service review or to verify the availability of sewer service alone.  To the contrary, CW-8 clearly requires a developer to obtain verification of "water and sewer service" from the District prior to submitting a land use or building permit application.

Gilray argues that the Permit Streamlining Act (PSA), (§ 65920 et seq.), imposes a mandatory duty. Gilray relies on section 65943, subdivision (a). That subdivision requires a public agency to notify an applicant for a "development project" in writing whether the application is complete. If the agency fails to point out any incompleteness within 30 days of submission, the application is deemed complete. Gilray argues that because the District failed to point out any incompleteness in his applications, its applications are deemed complete.

Gilray's argument is flawed. Even if the PSA applies, Gilray is not helped. His application may be deemed complete, but it does not change the nature of the application. It is still for sewer service only. Gilray does not claim he intended to apply for water and sewer service. In fact, he acknowledges that the District has imposed a water moratorium. In addition, in spite of much discussion of the water moratorium in his opening brief, he acknowledges that he is not challenging the water moratorium in this action. Gilray cites no authority requiring the District to treat his application as one for water and sewer service, an application he did not make, and in fact never intended to make.

In any event, the PSA does not apply here. It applies to a "development project[]." (§ 65921.) For the purposes of the PSA, "'development' means: [O]n land . . . the placement of any solid material or structure . . . ." (§ 65927.) Gilray points out that "structure" includes any "pipe, flume, conduit, siphon [or] aqueduct . . . ." (*Ibid.*) But Gilray did not apply to place any structure on the land. Instead, he applied for a commitment from the District to allow him to connect to the sewer system. That is not a development project. A commitment from the District would not allow Gilray to place any solid structure on the land.

Gilray argues that the commitment for sewer service is at least a step in obtaining a permit for a development project. But it is not even a step. CW-8 plainly requires that the District verify "water and sewer" service. No matter how hard Gilray tries, he cannot make the words "water and" go away.

4

For the first time on appeal, Gilray contends the District, as the lead agency, is required by the California Environmental Quality Act (CEQA) to hold a hearing.

Gilray argues that under CEQA, the lead agency must determine whether an application is complete, whether the proposed activities are subject to the exemption from CEQA, and whether to file a notice of exemption. (14 Cal. Code Regs., §§ 15060 (a) & (c), 15061 (a) & (d).)

Section 65950, subdivision (a) requires a "public agency that is the lead agency for a development project" to approve or disapprove the project within 180 days from when the agency certifies an environmental impact report (EIR), or 60 days if the application is exempt from CEQA or a negative declaration is adopted.

Gilray points out that the District was the lead agency for Cambria's Master Water Plan. But that does not mean it is the lead agency for every application that may involve water.

Section 65950, subdivision (a) applies only to a lead agency for a development project. CEQA defines "'project'" as "an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment . . . ." (Pub. Resources Code, § 21065.)

Gilray argues that building a home certainly causes a direct physical change in the environment. But Gilray did not apply to the District for a permit to build a home, and the District has no power to grant such a permit in any event. That power is vested in the County. Gilray only applied to the District for a service review and verification that the District would provide sewer service if the County ever grants a building permit. Neither the review nor the verification can cause any direct or indirect physical change in the environment. CEQA does not apply.

Finally, Gilray argues that because he pays a special assessment for sewer service, the District has a mandatory duty to provide it. In support of his argument, Gilray cites only *Knox v. City of Orland* (1992) 4 Cal.4th 132. But *Knox* does not discuss whether an assessment creates a mandatory duty to provide service. The question in

5

*Knox* was whether the assessment for park maintenance was valid. A case is not authority for issues not discussed therein. (*Contra Costa Water Dist. v. Bar-C Properties* (1992) 5 Cal.App.4th 652, 660.)

Because the District has no mandatory duty to accept and act on Gilray's applications, he is not entitled to a writ of mandate. Nor is Gilray entitled to a writ of administrative mandate. (Code Civ. Proc., § 1094.5.) Gilray cites *Helene Curtis, Inc. v. Los Angeles County Assessment Appeals Board* (2004) 121 Cal.App.4th 29, 37, for the proposition that a hearing need not have taken place for Code of Civil Procedure section 1094.5 to apply, as long as a hearing was legally required. Suffice it to say, no such hearing was legally required.

### III

Gilray contends he alleged a taking even if the District had no mandatory duty to accept and process his applications.

Gilray argues there is a taking when there is a deprivation of all economically beneficial use. (Citing *Lucas v. South Carolina Coastal Council* (1992) 505 U.S. 1003, 1018-1019.)

But as the Supreme Court explained in *Palazzolo v. Rhode Island* (2001) 533 U.S. 606, 618: "[A] takings claim challenging the application of land-use regulations is not ripe unless 'the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.'" (Quoting *Williamson Planning Commission v. Hamilton Bank* (1985) 473 U.S. 172, 186.)

Here far from having obtained a final decision from the District, Gilray has not even submitted a proper application. Gilray's takings claim is not ripe.

### IV

Finally, Gilray contends the trial court erred in not granting him leave to amend the petition. But Gilray does not suggest how he could amend to state a viable cause of action. Thus he has failed to show error.

6

The judgment is affirmed.  Costs on appeal are awarded to respondent.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:


YEGAN, J.


PERREN, J.

Jac Crawford, Judge

Superior Court County of San Luis Obispo

_____

Blum Collins, LLP, Craig M. Collins and Gary Ho for Plaintiffs and Appellants.

Carmel & Naccasha, LLP, Timothy Carmel and Michael M. McMahon for Defendant and Respondent.