[Sac. No. 5822. In Bank. May 6, 1948.]

ALAN J. AYLWARD et al., Respondents, v. STATE BOARD OF CHIROPRACTIC EXAMINERS et al., Appellants.

Robert W. Kenny and Fred N. Howser, Attorneys General, and J. Albert Hutchinson, Deputy Attorney General, for Appellants.

Morris Lavine for Respondents.

GIBSON, C. J.—Petitioners were licensed to practice chiropractic by the State Board of Chiropractic Examiners after passing special examinations, held pursuant to a resolution adopted in 1942, in which nearly all of the applicants were examined individually in separate written tests prepared, given, and graded by one board member. In 1943, the board held a hearing on charges that the method of conducting the examinations violated the statutes and that some of the licensees did not possess the required educational qualifications. The board found that no cause for revocation had been shown. In 1944, a new board, acting without notice, adopted a resolution canceling forty licenses, including those of petitioners. This proceeding was then instituted in the superior court to compel the board to annul its order and to refrain from attempting to cancel the licenses or in any way interfering with the rights of any of petitioners to follow their profession. The court issued a writ of mandate, and the board took this appeal therefrom.

The following proceedings were had before the board:

In *July, 1942*, the board adopted a resolution that applicants who received "emergency induction papers into the armed forces of the United States" be granted the privilege of writing special examinations, under the auspices of the member of the board closest to the applicant's residence, and that if the applicant passed the examination, the license might be sent to board members "by round robin for signature" and then forwarded to the new licentiate. All the licenses here involved were issued after each applicant had passed a "special examination" held pursuant to this resolution.

In *July, 1943*, after notice to the licensees, the board held a hearing upon charges, filed by an inspector of the board, that these licenses had been issued contrary to the provisions of the Chiropractic Act.* The charges were (a) that each applicant took an examination from only one member of the board, who prepared, gave and graded the examinations without participation by the other members, (b) that at the examinations the applicants were not designated by number instead of name and that the identity of each applicant was at all times during his examination known to the board member who conducted the examination, and (c) that the applicants did not then possess the educational qualifications required by the statute. The attorney general represented the board at the hearing, and some of the licensees appeared and were represented by counsel, while others, then in the armed forces, either were not served or were unable to be present.

At the close of the hearing the board concluded "that none of the matters presented were grounds under the Chiropractic Act† for revocation of any licenses." It found that

---

*Stats. 1923, page lxxxviii; Appendix to Deering's Business and Professions Code. The Chiropractic Act was an initiative measure approved November 7, 1922. Section 1 creates a board "to be known as the 'state board of chiropractic examiners,' " consisting of five members. The board has power to examine applicants and to issue and revoke licenses. (§ 4(c).) It may adopt "such rules and regulations as the board may deem proper and necessary for the performance of its work. . . ." (§ 4(b)), and it may "do any and all things necessary or incidental to the exercise of the powers and duties herein granted or imposed." (§ 4(e).) A majority of the board constitutes a quorum, and the affirmative vote of three members is required to carry a resolution or motion, to adopt any rule, or to authorize issuance of. a license. (§ 3.) Section 6(a) provides that the board "shall meet as a board of examiners" in January and July, and at such other times as may be found necessary for the performance of their duties. Each applicant is to be "designated by a number instead of the name, so that the identity will not be disclosed to the examiners until the papers are graded." (§ 6(b).) Written examinations are prescribed. (§ 6(c).) Educational requirements, including number of hours of study for designated subjects, are set forth in section 5 of the act.

†Section 10(a) of the act provides that the "board shall refuse to grant, or may revoke, a license to practice chiropractic . . . upon any of the following grounds," including fraud or deception in applying for a license or passing the examination, conviction of a crime involving moral turpitude,. and various other forms of *misconduct not pertinent* here. The section also provides that any licentiate or applicant "against whom any of the foregoing grounds for revoking or refusing a license" is charged, shall be furnished with a copy of the complaint and shall have a *hearing* before the board. Section 11 provides for cancellation or revocation for failure to record the license, and section 12 provides for forfeiture for failure to pay the annual renewal fee.

all licenses were issued by the board after a resolution had been duly and regularly passed authorizing the giving of special examinations and that many of the applicants were in the armed forces at the time of the hearing, while others were still "awaiting call and practicing their profession." The board further found that each examination was given by a regular board member from questions of the same type as those used in previous examinations; that some applicants were given numbers, but that nearly all examinations were given to individuals, at individual times and sittings; that each of the persons examined passed; that the papers, together with the results, were forwarded to Sacramento, "after which the grades were duly entered, licenses were then voted and issued, and signed by four or five members of the board in regular session."

In *May, 1944*, after its entire membership had changed, the board adopted a resolution canceling the licenses of 40 persons, including most, but apparently not all, of those involved in the 1943 hearing. No notice was given to any of the licensees, and neither they nor their counsel were present at the meeting, but the secretary mailed a copy of the resolution to each of them. As grounds for the resolution it was stated that the licenses had been unlawfully issued by the board contrary to the Chiropractic Act in that each licensee took an examination from only one member of the board who exclusively prepared, gave and graded the examination; that the applicants were not designated by number instead of name, and the identity of each applicant was known to the board member who gave the examination; that certain applicants did not then possess the required educational qualifications; and that certain licensees had each paid the sum of $100 to the examiner for his personal use. The action of the board was based on the records in the board's files, including the transcript of the 1943 hearing.

Petitioners then brought this action in the superior court to annul the order of the board revoking the licenses. The foregoing proceedings were presented in the form of stipulations, exhibits, and the testimony of two board members.

The court found that each petitioner was given an examination by a member of the board which was of the same type and character as that used in regular previous examinations; that each license was issued, approved, and signed by more than a majority of the board; that the resolution of

May, 1944, was adopted by the board without notice or hearing; that petitioners acted in good faith in taking the examinations; that none of them was guilty of fraud in securing a license; and that prior to May, 1944, the board had conducted a hearing after notice to petitioners and had fully investigated all the matters embraced in the May 1944 resolution and had acted upon them.

The court concluded that the prior action of the board was res judicata as to all matters embraced in the May 1944 resolution and that, having declined to revoke the licenses after a full hearing, the board had no authority thereafter to cancel them without notice.

The judgment provides that petitioners are entitled to a writ of mandamus commanding the board ''to annul its purported order canceling the said licenses and refrain from attempting to cancel the licenses heretofore issued to the applicants, or in any way interfering with the rights of them, or any of them, to follow his said profession as a chiropractor in the State of California, and to treat and accord the petitioners the same rights and privileges as other licensed chiropractors in the State of California, and to renew the said licenses in the usual way of renewals of licenses upon the payment of the renewal fees, and that said mandate direct and command said Board to refrain from interfering with the right of any of said petitioners to follow his said profession in the usual way hereafter.''

The trial court correctly determined that the board had no power to cancel the licenses without giving petitioners notice and a hearing. The statute (§ 10), in prescribing the procedure to be followed by the board in revoking licenses upon specified grounds, requires that the licensees be afforded a hearing. While invalidity of a license is not included in the grounds specified for revocation, the statute evidences the legislative intent that there should be notice and a hearing in any case where a license is to be revoked. The judgment, therefore, must be affirmed insofar as it annuls the order canceling petitioners' licenses.

The judgment, however, goes much further and prohibits the board from taking any future action with respect to the cancellation of the licenses. In making this order the court apparently proceeded on the theory that the board in 1943 had exhausted its power to act when it determined that there was no ground for revocation. The doctrine of res judicata in the strict sense is not applicable to a statewide agency such

as respondent, which is without power to make a final determination of a question of fact, and its decision will not be given res judicata effect in a subsequent action *in court.* (See *Empire Star Mines Co.* v. *California Emp. Com.,* 28 Cal.2d 33, 47-48 [168 P.2d 686].) ■ The *agency* however, may be bound by its prior action where it has made a determination of a question of fact within its powers, and it lacks authority to rehear or reopen the question. (*Olive Proration etc. Com.* v. *Agricultural etc. Com.,* 17 Cal.2d 204, 209 [109 P.2d 918]; *Heap* v. *City of Los Angeles,* 6 Cal.2d 405 [57 P.2d 1323]; *Proud* v. *McGregor,* 9 Cal.2d 178, 179 [70 P.2d 194]; *Pacheco* v. *Clark,* 44 Cal.App.2d 147, 153 [112 P.2d 67]; *Hoertkorn* v. *Sullivan,* 67 Cal.App.2d 151, 154 [153 P.2d 367]; *Matson Terminals, Inc.* v. *California Emp. Com.,* 24 Cal.2d 695, 702 [151 P.2d 202].)

Implicit in the cases denying a board's power to review or reexamine a question, however, is the qualification that the board must have acted within its jurisdiction and within the powers conferred on it. ■ Where a board's order is not based upon a determination of fact, but upon an erroneous conclusion of law, and is without the board's authority, the order is clearly void and hence subject to collateral attack, and there is no good reason for holding the order binding on the board. ■ Not only will a court refuse to grant mandate to enforce a void order of such a board (*Proud* v. *McGregor,* 9 Cal.2d 178 [70 P.2d 194]; *Pacheco* v. *Clark,* 44 Cal.App.2d 147 [112 P.2d 67]), but mandate will lie to compel the board to nullify or rescind its void acts. (*Board of Trustees* v. *State Bd. of Equalization,* 1 Cal.2d 784 [37 P.2d 84, 96 A.L.R. 775].) ■ While a board may have exhausted its power to act when it has proceeded within its powers, it cannot be said to have exhausted its power by doing an act which it had no power to do or by making a determination without sufficient evidence. In such a case, the power to act legally has not been exercised, the doing of the void act is a nullity, and the board still has unexercised power to proceed within its jurisdiction. ■ The question, therefore, is whether it has been erroneously determined as a matter of law that no cause for revocation has been established. As we have seen, the 1944 board purported to cancel licenses upon the grounds that some of the applicants did not possess the required educational qualifications, that some of them paid $100 to the examiner for his personal use, and that the examinations were not given in the manner prescribed by statute. The record indicates that the

charge that some of the applicants did not have the required educational qualifications was based on information contained in the board's files, but neither the documents nor proof of their contents was placed in evidence in the trial court, and there is nothing before us which shows that petitioners did not have the necessary qualifications. Further, we do not find any evidence which substantiates the charge that any of petitioners paid any sum of money for the personal use of the examiner.

It is clear, however, that the procedure prescribed by statute was not strictly followed in giving the examinations, and we must determine whether there was such a substantial departure as to render the licenses void as a matter of law.

The Chiropractic Act provides that the board shall have power to ''examine applicants and to issue and revoke licenses to practice chiropractic, as herein provided,'' and to adopt such rules and regulations as it may deem proper and necessary. (§ 4.) A majority of the board shall constitute a quorum, and there must be an ''affirmative vote of three members of said board to carry any motion or resolution, to adopt any rule, or to authorize the issuance of any license. . . .'' The requirements with reference to examinations are set forth in section 6, which prescribes that the board ''shall meet as a board of examiners on the first Tuesday following the second Monday of January and July of each year, and at such other times and places as may be found necessary for the performance of their duties.'' The section also specifically directs that each applicant ''shall be designated by a number instead of the name, so that the identity will not be disclosed to the examiners until the papers are graded,'' and that, with certain exceptions not pertinent here, all examinations ''shall be in writing'' and ''shall be in each of the subjects as set forth'' in the statutory schedule of minimum educational requirements.

The fact that the board did not hold a meeting for each examination would not seem to be of vital importance. The statute does not require that a quorum be present in the room where the test is being held, and the supervision of the applicants while taking the examination could properly be delegated to any member or officer of the board. Nor would the facts that the questions were prepared and the papers were graded by a single member necessarily mean that the examinations were fatally defective. If the questions were approved by the board before the examinations were held, it would be

entirely immaterial who prepared them. They were of the same type as those approved for previous examinations, and it must be assumed fairly tested the knowledge and fitness of applicants. There is nothing in the statute which requires that the board, as such, actually grade the papers. This task is customarily performed in board examinations by outsiders and certainly may be delegated to a member or officer of the board. In the present case the grades were impliedly approved by the board when the licenses were issued.

The most serious criticism that can be made of the examinations is that the procedure used violated the provision of the statute which directs that each applicant "shall be designated by a number instead of the name, so that the identity will not be disclosed to the examiners until the papers are graded." Although some of the applicants were given numbers, "nearly all examinations were given to individuals at individual times and sittings." It must be conceded that the provisions designed to conceal the identity of the applicant were not observed in examining some of these licensees. Although the purpose is a wholesome one and should be observed whenever possible, the failure strictly to comply with this provision is not, under the circumstances of this case, sufficient to render the examinations void. There is no evidence that favoritism was shown to any particular individual or that the fact that the identity of the applicant was known to the examiner resulted in partiality in any case.

The court found upon the uncontroverted evidence that all of the petitioners acted in good faith in taking the examinations, and we should not hold their licenses to be void as a matter of law unless required to do so by compelling reasons of public policy. Although members of the board might be subject to censure for failing to follow the statutory provisions with more exactness, petitioners who were without fault should not be severely penalized solely because the board was lax in the performance of its duty.

The petitioners all passed an examination which was fairly given and which adequately tested their qualifications to practice chiropractic. The public was fully protected, and the licenses should not be revoked merely because the procedure followed in conducting the examination did not strictly conform to that prescribed by the statute.

The judgment, however, goes too far in ordering the board to "refrain from attempting to cancel the licenses heretofore

issued to the applicants, or in any way interfering with the rights of them, or any of them. . . .'' The board should not be precluded from taking action against petitioners based on any proper legal ground and in accordance with the principles stated herein.

All portions of the judgment save that which annuls the order canceling the licenses are stricken therefrom, and, as so modified, the judgment is affirmed, with costs on appeal to petitioners.

Shenk, J., Carter, J., Edmonds, J., Spence, J., and Schauer, J., concurred. Traynor, J., concurred in the judgment.

Appellants' petition for a rehearing was denied June 3, 1948.

