Filed 5/29/26  Prang v. Assessment Appeals Bd. No. 6 CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JEFFREY PRANG, as Los Angeles County Assessor,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>ASSESSMENT APPEALS BOARD NO. 6 OF THE COUNTY OF LOS ANGELES,<br><br>Defendant and Respondent;<br><br>SEAN HOOSHANG NAMVAR, et al.,<br><br>Real Parties in Interest and Respondents. | B342735, B345399<br><br>(Los Angeles County Super. Ct. No. 23SMCP00421) |

APPEALS from a judgment of the Superior Court of Los Angeles County, Mark A. Young, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Renne Public Law Group, Michael K. Slattery, Thomas G. Kelch, Ryan P. McGinley-Stempel, and Mauricio A. Grande for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Law Office of Bruce Altschuld and Bruce E. Altschuld for Real Parties in Interest and Respondents.

_____

Plaintiff and Appellant, Los Angeles County Assessor Jeffrey Prang (the Assessor), appeals from a judgment denying his petition for a writ of administrative mandamus under Code of Civil Procedure section 1094.5 or a writ of traditional mandamus under Code of Civil Procedure section 1085.[1] The Assessor's petition challenged a decision by Defendant and Respondent, Assessment Appeals Board No. 6 of the County of Los Angeles (the Board). The Board's decision concerned the assessed value of the property at 416 N. Rockingham Avenue in Los Angeles (the Property), owned by Real Parties in Interest and Respondents Hooshang Sean Namvar and Shiva Nataly Haronnian (the Owners).

We conclude that the trial court erred by sustaining the Owners' demurrer to the Assessor's administrative mandate claim on statute of limitations grounds. We further conclude that the trial court properly denied the Assessor's traditional mandate claim on the merits at trial. Accordingly, we affirm the judgment as to the traditional mandate claim, reverse the judgment as to the administrative mandate claim, and remand for a trial on the merits of the latter claim.

_____

[1] Undesignated statutory references are to the Code of Civil Procedure.

## BACKGROUND

### A.  Property taxes and assessment appeals boards

"In 1978, Proposition 13 amended the California Constitution to limit real property taxes to 1 percent of a property's base year value adjusted annually by an inflation factor not to exceed 2 percent of the prior year's value. [Citations.]  Proposition 13 set the base year value used to determine each year's taxes at the value the local assessor set on the 1975-1976 tax bill." (*William Jefferson & Co., Inc. v. Orange County Assessment Appeals Bd. No. 2* (2014) 228 Cal.App.4th 1, 9 (*William Jefferson*).)  "Since the passage of Proposition 13, an assessor may reassess real property only if one of three triggering events has occurred—namely, (1) when the property has been 'purchased,' (2) when the property is 'newly constructed,' or (3) when 'a change in ownership has occurred.' " (*Prang v. Los Angeles County Assessment Appeals Bd. No. 2* (2020) 54 Cal.App.5th 1, 12 (*Prang*).)

Upon reassessment, the base year value is the fair market value on the date of the purchase or change in ownership.  (Rev. & Tax. Code, § 110.1, subds. (a)-(b).)  "For purposes of determining the . . . 'fair market value' of real property . . . being appraised upon a purchase, . . . 'fair market value' is the purchase price paid in the transaction unless it is established by a preponderance of the evidence that the real property would not have transferred for that purchase price in an open market transaction."  (Rev. & Tax. Code, § 110, subd. (b).)

"The California Constitution establishes local boards of equalization (either a county assessment appeals board or the board of supervisors) to hear appeals from decisions of the local tax assessor.  [Citations.]  The local board may hear appeals

3

concerning not only the assessed value, but also the assessor's determination on whether a change of ownership has occurred. [Citations.] A property owner initiates the appeals process by filing a written application to change the assessment with the local assessment appeals board. [Citations.] The local board then must conduct a public hearing to receive evidence and decide the appeal." (*William Jefferson*, *supra*, 228 Cal.App.4th at p. 9.)

**B.** **Believers, LLC, purchased the Property in April 2007 and transferred it to the Owners in November 2007. In 2010, the Board approved the Owners' and the Assessor's stipulation to an assessed value of $3.774 million as of April and November 2007.**

On April 20, 2007, Believers, LLC, purchased the Property for $3.7 million. On November 21, 2007, Believers transferred the Property to the Owners by grant deed, which declared: " 'The grantors and the grantees in this conveyance are comprised of the same parties who continue to hold the same proportionate interests in the property . . . .' "

The Assessor reassessed the Property's value after the April 2007 purchase and reassessed it again after the November 2007 transfer. Although the record contains conflicting information regarding the precise values determined by the Assessor, it appears that the Assessor-determined values were no lower than $6.8 million and no higher than $7,760,343.

In 2009, the Owners applied to the Board to change the Property's enrolled value from $7,760,343 (as identified on the application) to $3.7 million, on the grounds that the value had declined or that the November 2007 transfer had not been a change of ownership. At the hearing on the application in March

4

2010, the Owners' agent, Ramin Salari, withdrew the grounds stated in the application and asked the Board to invoke its jurisdiction to address an alternative ground, i.e., that the Assessor incorrectly assessed the value when a change of ownership occurred.

The Assessor's representative, Mark McNeil, joined in Salari's request and represented that the Assessor would "make a correction as far as the 4-20-07 date" (i.e., the April 2007 purchase date) and also make a recommendation regarding the November 2007 transfer date. McNeil further represented that "the value . . . that the Board is deciding for [the November 2007 transfer date] is also going to be applied to the April 20th [purchase] date."

The Board agreed to invoke its jurisdiction to decide the issue of whether the Assessor incorrectly assessed the value upon a change of ownership.[2]

Scott Schenter, an appraiser employed by the Assessor, testified that the Assessor's recommended 2008 base year value was $3.7 million, based on the $3.7 million purchase price in April 2007. Schenter testified that the purchase was made through an open-market sale and that comparable real estate transactions supported the purchase price.[3] Schenter's appraisal

---

[2] "The board's authority to determine the full value of property or other issues, while . . . usually exercised in response to an application for equalization, is not predicated on the filing of an application nor limited by the applicant's request for relief." (Cal. Code Regs., tit. 18, § 324, subd. (b).)

[3] The Owners argue that Schenter did not testify at the 2010 Board hearing. In their 2020 brief to the Board, however,

worksheet, which the Board received in evidence, identified three allegedly comparable transactions, each of which occurred more than 90 days after the April 2007 purchase and the November 2007 transfer. No participant in the 2010 hearing addressed whether those transactions were too temporally remote to qualify for the Board's consideration. (See Rev. & Tax. Code, § 402.5 ["in order to be considered comparable, the sales shall be sufficiently near in time to the valuation date . . . . 'Near in time to the valuation date' does not include any sale more than 90 days after the valuation date"]; Cal. Code Regs., tit. 18, § 324, subd. (d) ["the board shall not consider a sale [of another property] if it occurred more than 90 days after the date for which value is being estimated"].)

Through Salari, the Owners stipulated to the Assessor's recommended base year value. The Board approved the parties' stipulation and ordered the Assessor to enroll a 2008 base year value of $3.774 million, based on the stipulated value of $3.7

the Owners asserted that Schenter *did* testify at the 2010 hearing, and cited an audio exhibit that is not in the appellate record. The appellate record contains a transcript of the 2010 hearing, which expressly indicates that Schenter appeared at the hearing and supports a reasonable inference that Schenter was the "Man" (unidentified by name in the transcript) who testified about the basis for the Assessor's $3.7 million recommendation. As discussed below, Schenter later testified in another proceeding that he had, in fact, testified about that recommendation at the 2010 Board hearing. In any event, because we resolve this appeal on unrelated grounds, we need not determine whether Schenter testified at the 2010 Board hearing, which issue the trial court may address to the extent the parties raise it on remand.

million in April and November 2007 and a 2 percent adjustment for inflation.

**C.**	**In 2012, the Assessor determined that the November 2007 transfer was not a change of ownership and changed the 2008 base year value to the value that the Assessor had determined before the Board's 2010 decision. The Owners applied to the Board to correct the value back to the stipulated value approved by its 2010 decision.**

In 2012, Salari, McNeil, and Schenter were charged with various criminal offenses related to the Property and other properties (discussed in more detail below). A few weeks after Schenter was charged, the Assessor determined that the November 2007 transfer was not a change of ownership, based on the grant deed's declaration that the grantors and grantees were the same parties who continued to hold the same proportionate interests.[4]

Based on that determination, the Assessor reversed the 2010 reassessment of the Property's value as of the November 2007 transfer, making the April 2007 purchase the controlling change of ownership for purposes of determining the 2008 base year value. In 2012, the Assessor sent the Owners an adjusted property tax bill based on a change of the assessed value from

_____

[4] "Change in ownership shall not include: [¶] . . . [¶] Any transfer between . . . individuals and a legal entity . . . that results solely in a change in the method of holding title to the real property and in which proportional ownership interests of the transferors and transferees . . . in each and every piece of real property transferred, remain the same after the transfer." (Rev. & Tax. Code, § 62, subd. (a)(2).)

7

$3.774 million (the stipulated value that the Board's 2010 decision approved) to $7,760,343 (the value that the Owners had challenged in their 2009 application to the Board).

The Owners (no longer represented by Salari) applied to the Board to correct the Assessor's 2012 redetermination of the April 2007 value. Between 2013 and 2022, the Board granted the Assessor's requests to continue the hearing based on the pending criminal proceedings against Salari, McNeil, and Schenter. In 2022, although the criminal proceedings remained pending, the Board scheduled a February 2023 hearing on the Owners' application.

The administrative record contains no written arguments by the Assessor. During a 2014 hearing at which the Board granted a continuance, the Assessor's representative made the following representations to the Board: "[T]he conclusion of the Assessor is that there was no reassessable event [on] November 21, 2007, which, in our view, means that the pertinent change in ownership date for 2007 was the date of April 20th, 2007 . . . . [¶] . . . [¶] The Assessor reviewed the propriety of making a change as of April 20th, 2007, de novo, the Plaintiff's [*sic*] independent discretion, and . . . determined that the value change that Mr. McNeil agreed to as part of that original application is not appropriate and should not be rolled over as to that earlier change in value date [i.e., April 20, 2007]."

In a 2020 brief to the Board, the Owners argued that the Assessor's 2012 redetermination of the April 2007 value was void because it contradicted the Board's 2010 decision, and that notwithstanding the pending criminal proceedings against McNeil, Schenter, and Salari, the Assessor had offered no evidence that the Board's 2010 decision was obtained by fraud.

8

**D.    In 2023, the Board determined that its 2010 decision remained binding and ordered the Assessor to re-enroll the $3.774 million value approved by that decision.**

At the February 2023 evidentiary hearing, the Board invited oral argument from the Assessor regarding why it should not adhere to its 2010 decision that approved the parties' stipulation to the $3.774 million value then recommended by the Assessor.

The Assessor argued that the Board's 2010 decision determined the Property's value only for the November 2007 transfer, not for the April 2007 purchase. The Assessor acknowledged that McNeil represented that the value would also apply to April 2007, but argued that McNeil's representations did not qualify as a stipulation. In opposition, the Owners argued that McNeil stipulated that the $3.7 million value applied to both April 2007 and November 2007.

The Assessor also argued that Schenter's testimony and appraisal worksheet did not support the Board's approval of the $3.7 million stipulated value because the allegedly comparable sales that Schenter identified occurred more than 90 days after the April 2007 purchase and November 2007 transfer and were therefore inadmissible under Revenue and Taxation Code section 402.5.[5]

---

[5] The Assessor also challenged Schenter's appraisal on the grounds that Schenter's supervisor did not sign his appraisal worksheet and the statutory presumption that the $3.7 million purchase price reflected fair market value (Rev. & Tax. Code, § 110, subd. (b)) applied only to the April 2007 purchase, not the November 2007 transfer.

9

The Board concluded that its 2010 decision remained binding on the parties under State Board of Equalization Rule 326. The Board reasoned, in part, that the parties stipulated to the $3.774 million value (through representatives with actual or apparent authority to enter the stipulation), and that the Assessor's 2012 determination that no change of ownership occurred in November 2007 "came too late" to change the Board's approval of the stipulated value. The Board ordered the Assessor to re-enroll the $3.774 million value approved by its 2010 decision.

**E.     The Assessor petitioned the trial court for a writ of administrative or traditional mandamus. The trial court sustained a demurrer on statute of limitations grounds to the administrative mandate claim, but overruled it as to the traditional mandate claim.**

In July 2023, within six months of the Board's February 2023 decision (but more than 90 days after it), the Assessor filed a petition for a writ of administrative mandamus. After the trial court sustained the Owners' demurrer to the original petition with leave to amend, the Assessor filed the operative first amended petition, which sought either a writ of administrative mandamus under section 1094.5 or a writ of traditional mandamus under section 1085. Under both sections, the Assessor sought a writ directing the Board to reverse its conclusion that its 2010 decision remained binding, and to schedule a new Board hearing to determine the Property's value as of the April 2007 purchase.

The trial court again sustained the Owners' demurrer to the Assessor's administrative mandate claim, this time without leave to amend, but overruled the demurrer as to the traditional

10

mandate claim. The court concluded that the administrative mandate claim was untimely under section 1094.6, which imposes a 90-day statute of limitations on any administrative mandate claim challenging a local agency's "decision" (a statutory term of art discussed in more detail below). (Code Civ. Proc., § 1094.6, subds. (a)-(b).) However, the court concluded that the traditional mandate claim was timely under Revenue and Taxation Code section 1615, which imposes a six-month statute of limitations on any action or proceeding brought by a government officer to review a decision of an assessment appeals board. The court reasoned that the amended petition's traditional mandate claim related back to the original petition, which was timely filed within six months after the Board's 2023 decision.

**F. The trial court denied the Assessor's traditional mandate claim on the merits at trial, concluding that the Assessor failed to show the Board abused its discretion.**

In his trial brief, the Assessor argued that the Board abused its discretion by failing to exercise its inherent equitable authority to set aside its 2010 decision on the ground that the decision had been obtained by extrinsic fraud. The Assessor argued that the trial court should issue a writ of traditional mandamus directing the Board to exercise that authority and to vacate its 2010 decision.

In support of his fraud argument, the Assessor requested judicial notice of several documents from the pending criminal proceedings against Schenter, McNeil, and Salari (none of which documents were in the administrative record before the Board). The trial court did not rule on the Assessor's request for judicial

11

notice, and the Assessor has not requested judicial notice in this court. We describe the documents attached to the Assessor's request for judicial notice to provide context for his arguments on appeal.

The Assessor requested judicial notice of a 60-count felony complaint filed in 2012 in *People v. Schenter*, Los Angeles County Superior Court no. BA397710. One count alleged that between October 2010 and January 2011 (after the Board's March 2010 decision), Schenter stole, destroyed, and/or falsified a transfer value multi-entry form pertaining to the Property. The Assessor also requested judicial notice of a document from the superior court's website indicating that the case against Schenter remained pending and had not yet proceeded to a preliminary hearing at that time.

Next, the Assessor requested judicial notice of a 32-count felony complaint filed in 2012 in *People v. Rodriguez*, Los Angeles County Superior Court no. BA403666. One count alleged that at the time of the Board's 2010 hearing and decision, McNeil, Salari, and Juan Renaldo Rodriguez (also known as John Noguez), who was a special assistant to the Assessor at that time, misappropriated a $47,000 property tax refund pertaining to the Property.[6]

Finally, the Assessor requested judicial notice of Schenter's testimony, over four days in April 2023, at a

---

[6] In 2020, Division Eight of this Appellate District issued a writ of mandate directing the superior court in case no. BA403666 to dismiss an untimely filed information against McNeil, Salari, and Noguez, without prejudice to another prosecution for the same offenses. (*Salari v. Superior Court* (2020) 49 Cal.App.5th 325, 327.)

12

preliminary hearing in a subsequent prosecution against McNeil, Salari, and Noguez, *People v. Rodriguez*, Los Angeles County Superior Court no. BA488826.  In the portion of Schenter's testimony that the Assessor identified as relevant, Schenter admitted that he had lied to the Board under oath when he offered reasons to support the Property's stipulated $3.7 million value.

In the Owners' trial brief, they argued that Schenter's alleged fraud did not support the Assessor's challenge to the Board's 2023 decision because the Assessor had not raised the fraud issue or produced evidence of fraud before the Board. They further argued that the Assessor's 2012 attempt to correct the Property's assessed value was untimely under Revenue and Taxation Code section 51.5. which imposes a four-year deadline on an assessor's correction of any error in the determination of a base year value which involves the exercise of the assessor's judgment as to value.  (Rev. & Tax. Code, § 51.5, subd. (b).)

After trial, at which the parties offered no additional evidence, the court issued a minute order denying the Assessor's petition for a writ of traditional mandamus on the merits.  The trial court concluded that the Assessor failed to show the Board abused its discretion, for two reasons.  First, the court found that the Assessor's cited authority was insufficient to establish that the Board had inherent equitable authority to set aside its 2010 decision on the ground of extrinsic fraud, or a ministerial duty to do so.  Second, the court concluded that the Assessor's 2012 attempt to correct the stipulated $3.774 million value was untimely under Revenue and Taxation Code section 51.5.

Before the trial court entered judgment, the Assessor filed a notice of appeal from the forthcoming judgment, and attached

13

the minute order denying his traditional mandate claim. On December 20, 2024, the trial court entered judgment. On March 28, 2025, the Assessor filed a second notice of appeal from the judgment. We discuss the timeliness of the notices of appeal below.

## DISCUSSION

### A. We have jurisdiction over the Assessor's appeals.

The Owners argue that we lack jurisdiction over the Assessor's consolidated appeals because the Assessor's second notice of appeal was untimely. They do not address the Assessor's first notice of appeal. For the reasons explained below, we conclude that we have jurisdiction over both appeals.

We exercise our discretion to treat the Assessor's first notice of appeal from the judgment, which he prematurely filed before the judgment was entered (but after the trial court issued its minute order denying his petition), as if it had been timely filed immediately after the judgment's entry. (Cal. Rules of Court, rule 8.104(d)(2); *Castillo v. Glenair, Inc.* (2018) 23 Cal.App.5th 262, 275, disapproved on another ground by *Grande v. Eisenhower Medical Center* (2022) 13 Cal.5th 313.) As noted, the Owners do not address the first notice of appeal, much less argue that we should not exercise our discretion in that manner.

Further, we conclude that the Assessor's second notice of appeal was timely filed after entry of judgment. "[T]he time to appeal in administrative mandate proceedings begins with the entry of 'judgment' or service of notice of entry of 'judgment,' not with the [prejudgment] filing of an 'order' or other ruling, or service of notice of filing of such a ruling, even where an appellate court might deem such a [prejudgment] ruling

14

appealable in order to vindicate the right of appeal."[7] (*Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 657 (*Meinhardt*).)

On December 20, 2024, the trial court entered judgment. The record does not indicate that either the superior court clerk or a party served notice of entry of judgment or a file-endorsed copy of the judgment. Thus, the Assessor's time to appeal from the judgment expired 180 days after the judgment's entry, on June 18, 2025. (Cal. Rules of Court, rule 8.104(a); *Meinhardt*, *supra*, 16 Cal.5th at p. 657.) The Assessor timely filed his second notice of appeal within the 180-day deadline, on March 28, 2025.[8]

---

[7] The Owners acknowledge that *Meinhardt* held prejudgment rulings are insufficient to trigger the appeal deadline, but they argue that *Meinhardt* does not apply retroactively to the trial court's final ruling in November 2023 (months before the *Meinhardt* decision). We disagree. *Meinhardt* resolved a split of authority. (*Meinhardt*, *supra*, 16 Cal.5th at p. 649 [Supreme Court granted review to "resolve uncertainty" reflected in split of authority among Courts of Appeal]; *id.* at p. 663, fn. 14 [disapproving one line of authority].) "When a decision resolves a split of authority[,] the decision has automatic retroactive application . . . ." (*Burckhard v. Del Monte Corp.* (1996) 48 Cal.App.4th 1912, 1917, fn. 5; see also *id.* at pp. 1916-1917; Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2025) ¶ 14:198.2a, p. 88.)

[8] The trial court ordered the judgment entered nunc pro tunc as of October 14, 2024. However, for purposes of determining the timeliness of the Assessor's second appeal, the controlling date is December 20, 2024, when the trial court actually entered the judgment. (See, e.g., *Phillips v. Phillips*

15

In short, we conclude that the Assessor's first and second notices of appeal were both timely and that we have jurisdiction over the appeals.

## B. The trial court erred by sustaining the Owners' demurrer to the Assessor's petition for a writ of administrative mandamus.

The trial court sustained the Owners' demurrer to the Assessor's administrative mandate claim based on the court's conclusion that the claim was untimely under section 1094.6 because the Assessor filed the claim more than 90 days after the Board made its final decision.

Section 1094.6 provides: "Judicial review of any *decision* of a local agency . . . may be had pursuant to Section 1094.5 of this code only if the petition for writ of mandate pursuant to such section is filed within the time limits specified in this section." (§ 1094.6, subd. (a), italics added.) "Any such petition shall be filed not later than the 90th day following the date on which the *decision* becomes final." (§ 1094.6, subd. (b), italics added.) "As used in this section, decision means a decision subject to review pursuant to Section 1094.5, suspending, demoting, or dismissing an officer or employee, revoking, denying an application for a permit, license, or other entitlement, imposing a civil or administrative penalty, fine, charge, or cost, or denying an application for any retirement benefit or allowance." (§ 1094.6, subd. (e).)

---

(1953) 41 Cal.2d 869, 875 ["Even if the judgment were entered nunc pro tunc, a party's right to an appeal cannot be cut off by antedating the entry of the judgment from which he desires to appeal" (italics omitted)].) In any event, the Assessor filed his second notice of appeal within 180 days after October 14, 2024.

The Assessor argues that section 1094.6's statute of limitations does not apply to his petition for a writ of administrative mandamus because the Board's challenged 2023 decision is not a "decision" as defined by subdivision (e). The Owners do not address subdivision (e) or respond to the Assessor's argument regarding it. We agree with the Assessor.

The Board's 2023 decision is not a decision "suspending, demoting, or dismissing an officer or employee, revoking, denying an application for a permit, license, or other entitlement, imposing a civil or administrative penalty, fine, charge, or cost, or denying an application for any retirement benefit or allowance." (§ 1094.6, subd. (e).) The trial court did not conclude otherwise, and as noted, the Owners do not argue otherwise. Thus, we conclude that section 1094.6's statute of limitations does not apply to the Assessor's administrative mandate claim. (See § 1094.6, subd. (a).)

Rather, as the trial court concluded with respect to the Assessor's *traditional* mandate claim, the administrative mandate claim was timely under Revenue and Taxation Code section 1615, because the Assessor filed his original petition (to which the operative first amended petition relates back) within six months after the Board made its final decision. (See *ibid.* ["No action or proceeding shall be brought in any court on behalf of any governmental officer . . . to review a decision of . . . an assessment appeals board unless such action or proceeding is commenced within six months from the date the board makes its final determination"].)

The Owners erroneously imply that section 1094.6's statute of limitations applies to *all* administrative mandate claims involving local agencies. The statutory text quoted above

17

provides otherwise.  (§ 1094.6, subds. (a), (e); see also *Simonelli v. City of Carmel-by-the-Sea* (2015) 240 Cal.App.4th 480, 486 [trial court erred by applying section 1094.6's statute of limitations to city's decision approving permit, because that decision "d[id] not come within the definition of 'decision' in section 1094.6, subdivision (e), which, as to permits, applies to only the *revocation or denial* of a permit" (italics added)].)

The Owners also rely on Code of Civil Procedure section 1094.6, subdivision (g), which provides:  "This section shall prevail over any *conflicting* provision in any otherwise applicable law relating to the subject matter, unless the conflicting provision is a state or federal law which provides a shorter statute of limitations, in which case the shorter statute of limitations shall apply."  (Italics added.)  However, as we have explained, section 1094.6's statute of limitations does not apply to the Assessor's petition.  Thus, with respect to the petition's timeliness, section 1094.6 does not conflict with—and cannot prevail over—the longer statute of limitations provided by Revenue and Taxation Code section 1615.

Accordingly, we conclude that the trial court erred by sustaining the Owners' demurrer to the Assessor's administrative mandate claim.  Some authority indicates that the erroneous sustaining of a demurrer to a single cause of action is reversible per se (i.e., not subject to review for harmless error), even if other causes of action were resolved against the plaintiff at trial.  (*Deeter v. Angus* (1986) 179 Cal.App.3d 241, 251; but see *Curtis v. Twentieth Century-Fox Film Corp.* (1956) 140 Cal.App.2d 461, 465 [order sustaining demurrer to plaintiff's second count with leave to amend, which leave plaintiff did not exercise, did not prejudice plaintiff on appeal from judgment

18

after jury trial on first count, because second count "add[ed] nothing to the first count" and "[a]ll evidence which could have been introduced under the averments of the second count was introduced under the averments of the first count"].)

Even assuming, arguendo, the error is subject to review for harmless error, the record shows a reasonable probability that the Assessor would have obtained a more favorable result if the trial court had allowed the administrative mandamus claim to proceed to trial on the merits. At trial, the court remarked that the Assessor's allegations of fraud before the Board raised an "important issue," but that traditional mandamus under section 1085 was not "the proper vehicle," and that administrative mandamus under section 1094.5 was unavailable because, in the court's view, the applicable statute of limitations had expired. Those remarks suggest that had the court concluded, as we have, that the Assessor's administrative mandate claim was timely, the court might have considered granting relief on that claim despite denying relief on the traditional mandate claim.

We observe that in administrative mandate proceedings, a trial court has discretion to consider evidence outside the administrative record (extra-record evidence) that did not exist at the time the agency made its challenged decision, and to remand to the agency for the agency to reconsider its decision in light of such evidence. (*Fort Mojave Indian Tribe v. Department of Health Services* (1995) 38 Cal.App.4th 1574, 1594-1595 (*Fort Mojave*); see also § 1094.5, subd. (e); Asimow et al., Cal. Practice Guide: Administrative Law (The Rutter Group 2025) ¶ 20:105, p. 18.) That discretion is not subject to the same limitations that, as we will discuss below, apply in traditional mandate proceedings to review a quasi-legislative decision. (*Fort Mojave*,

19

at p. 1594; see also Asimow et al., Cal. Practice Guide: Administrative Law, *supra*, ¶ 20:42, p. 10 ["The exception to the closed record rule applies more broadly on administrative mandamus review of adjudicatory (but not quasi-legislative) decisions"].)

Because we conclude that the sustaining of the demurrer was prejudicial error, we will reverse the judgment as to the administrative mandate claim and remand to the trial court for a trial on that claim's merits. We now turn to the traditional mandate claim.

## C. The trial court properly denied the Assessor's petition for a writ of traditional mandamus.

Traditional mandamus "will lie to correct abuses of discretion." (*County of Los Angeles v. City of Los Angeles* (2013) 214 Cal.App.4th 643, 654 (*County of Los Angeles*).) "In determining whether a public agency has abused its discretion, the court may not substitute its judgment for that of the agency, and if reasonable minds may disagree as to the wisdom of the agency's action, its determination must be upheld. [Citation.] A court must ask whether the public agency's action was arbitrary, capricious, or entirely lacking in evidentiary support, or whether the agency failed to follow the procedure and give the notices the law requires."[9] (*Ibid.*)

The Assessor argues that the Board exceeded its jurisdiction and therefore abused its discretion by failing to

[9] Alternatively, traditional mandamus will lie to compel a public agency to perform a ministerial duty, i.e., a duty required by statute. (*County of Los Angeles*, *supra*, 214 Cal.App.4th at p. 653.) The Assessor does not argue that the Board failed to perform a ministerial duty.

exercise its inherent authority to set aside its 2010 decision on the ground that the decision was obtained by extrinsic fraud. The Assessor further argues that the trial court erroneously found that the four-year deadline imposed by Revenue and Taxation Code section 51.5 barred the Assessor's attempt to correct the $3.774 million value.

To provide context for the Assessor's arguments and guidance for the proceedings on remand, we first consider the scope of the Board's inherent authority to reconsider its 2010 decision. We then address his arguments on the merits of his traditional mandate claim.

## 1. The Board has inherent authority to set aside its 2010 decision if the decision exceeded its jurisdiction.

Generally, "unless permitted by statute, an administrative agency may not reopen or reconsider an adjudicative decision." (*Helene Curtis, Inc. v. Los Angeles County Assessment Appeals Bds.* (2004) 121 Cal.App.4th 29, 39 (*Helene Curtis*).) "But this rule does not preclude an agency from rescinding a decision that exceeded its jurisdiction." (*Id.* at p. 39; accord, *1041 20th Street, LLC v. Santa Monica Rent Control Bd.* (2019) 38 Cal.App.5th 27, 45 (*1041 20th Street*) ["the doctrine of administrative finality does not apply when an agency acts beyond its authority"].)

In early cases, our Supreme Court held that "an agency may be without power to change a prior decision where there is no statutory authority to rehear or reopen the matter." (*California Teachers Assn. v. Butte Community College Dist.* (1996) 48 Cal.App.4th 1293, 1303 (*Butte*), citing *Olive Proration etc. Com. v. Agri. etc. Com.* (1941) 17 Cal.2d 204, 209 (*Olive Proration*).) "However, our Supreme Court later said: 'Implicit

in the cases denying a board's power to review or reexamine a question [such as *Olive Proration*], is the qualification that the board must have acted within its jurisdiction and within the powers conferred on it. Where a board's order is not based upon a determination of fact, but upon an erroneous conclusion of law, and is without the board's authority, the order is clearly void and hence subject to collateral attack, and there is no good reason for holding the order binding on the board. . . . [M]andate will lie to compel the board to nullify or rescind its void acts.' " (*Butte*, at p. 1304, quoting *Aylward v. State Bd. of Chiropractic Examiners* (1948) 31 Cal.2d 833, 839 (*Aylward*); accord, *1041 20th Street, supra*, 38 Cal.App.5th at p. 45.)

As the Supreme Court explained in *Aylward*: "While a board may have exhausted its power to act when it has proceeded within its powers, it cannot be said to have exhausted its power by doing an act which it had no power to do or by making a determination without sufficient evidence. In such a case, the power to act legally has not been exercised, the doing of the void act is a nullity, and the board still has unexercised power to proceed within its jurisdiction." (*Aylward, supra*, 31 Cal.2d at p. 839; accord, *Helene Curtis, supra*, 121 Cal.App.4th at pp. 39-40.)

"The power enunciated in *Aylward* is not dependent on the existence of any statutory authority but applies where there is no statutory basis to reopen a prior decision." (*Butte, supra*, 48 Cal.App.4th at p. 1305.) In other words, it is an inherent power.[10] (See *In re Fain* (1976) 65 Cal.App.3d 376, 389 (*Fain*)

---

[10] In *City of Fillmore v. Board of Equalization* (2011) 194 Cal.App.4th 716, 732 (*Fillmore*), which did not address *Aylward*,

["Any deliberative body—administrative, judicial or legislative—has the inherent power to reconsider an action taken by it unless the action is such that it may not be set aside or unless reconsideration is precluded by law"].)

Here, without addressing whether it had inherent authority to reconsider its 2010 decision, the Board concluded that the decision remained binding under State Board of Equalization Rule 326 (Rule 326).[11]  An agency "may not adopt an administrative rule which diminishes its inherent power to reconsider its actions where the Legislature has not done this in the enabling [statutory] law." (*Fain*, *supra*, 65 Cal.App.3d at p.

_____

the appellate court stated that "[a]n administrative agency has no inherent authority to reconsider a final administrative decision."  To support that proposition, the court cited two of the cases that the Supreme Court qualified in *Aylward*. (*Id.* at p. 732, citing *Olive Proration*, *supra*, 17 Cal.2d at p. 209, and *Heap v. City of Los Angeles* (1936) 6 Cal.2d 405, 407 (*Heap*).)  *Fillmore* also cited a footnote in our opinion in *Gutierrez v. Board of Retirement of Los Angeles County Employees Retirement Ass'n* (1998) 62 Cal.App.4th 745, 749, footnote 3, which likewise cited *Olive Proration* and *Heap* but did not address *Aylward*.  Those authorities do not disturb our conclusion that under our high court's decision in *Aylward*, the Board has inherent authority to reconsider a decision that exceeded its jurisdiction.

[11] Rule 326 provides:  "The decision of the board upon an application is final.  The board shall not reconsider or rehear an application or modify a decision unless: [¶] (1) The decision reflects a ministerial clerical error; or [¶] (2) The decision was entered as the result of the applicant's failure to appear for the hearing and . . . the applicant [timely] furnishes evidence establishing, to the satisfaction of the board, excusable good cause for the failure to appear." (Cal. Code Regs., tit. 18, § 326.)

391.)  The statutes cited as authority for Rule 326 do not address reconsideration or rehearing.  (Cal. Code Regs., tit. 18, § 326; Gov. Code, § 15606; Rev. & Tax. Code, § 1601 et seq.)

Absent any statute indicating that the Legislature intended to eliminate the Board's inherent authority to reconsider a decision that exceeded its jurisdiction, we conclude that Rule 326 does not eliminate that authority or preclude its exercise.  (*Fain, supra,* 65 Cal.App.3d at p. 391; cf. *Flightsafety Internat. Inc. v. Assessment Appeals Bd.* (2003) 105 Cal.App.4th 620, 628, fn. 12 [Rule 326 cannot supersede a statute].)

**2. We need not decide whether the Board would have jurisdiction to set aside its 2010 decision because of extrinsic fraud because, assuming it did, the Assessor failed to show that the Board abused its discretion by failing to set aside that decision on the ground of extrinsic fraud.**

Courts have inherent equitable authority to set aside void judgments.  (*Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 43.)  Separately, courts have inherent equitable authority to set aside judgments that were obtained by extrinsic fraud.  (*Id.* at p. 47; see also *California Capital Ins. Co. v. Hoehn* (2024) 17 Cal.5th 207, 215-216 (*Hoehn*); 8 Witkin, Cal. Procedure (6th ed. 2026) Attack on Judgment in Trial Court, § 222, pp. 817-818.)

Relying on *Mullen v. Department of Real Estate* (1988) 204 Cal.App.3d 295 (*Mullen*), the Assessor argues that administrative agencies have the same inherent equitable authority as courts to set aside an otherwise final decision on the ground of extrinsic fraud.

24

In *Mullen*, the California Department of Real Estate adopted an administrative law court's decision that revoked a real estate broker's license and stayed the revocation subject to conditions. (*Mullen, supra*, 204 Cal.App.3d at pp. 297-298.) The trial court entered a judgment denying the broker's petition for a writ of administrative mandamus to set aside the department's decision. (*Id.* at p. 300.) On appeal, the broker requested leave to produce a key witness's declaration admitting he had perjured himself during the administrative proceeding. (*Id.* at p. 301.) Applying the same principles that govern an independent action to challenge a judgment on the ground of extrinsic fraud, the appellate court denied the request because the evidence of perjury in the administrative proceeding was evidence of *intrinsic* fraud and therefore insufficient to show that the trial court should have issued a writ to set aside the administrative decision.[12] (*Ibid.*) The *Mullen* court did not address whether an administrative agency—rather than a court in an independent action—has inherent authority to determine whether the agency's decision was obtained by extrinsic fraud and, if so, to set aside the decision.

---

[12] " 'A direct attack on an otherwise final, valid judgment by way of an independent action to set it aside [citations] is permitted where it appears that the complaining party was fraudulently prevented from presenting his claim or defense in the prior action.' [Citation.] This is known as extrinsic fraud." (*Mullen, supra*, 204 Cal.App.3d at p. 301.) "However, where the fraud was committed within the trial there can be no relief. '[I]t is settled beyond controversy that a decree will not be vacated merely because it was obtained by forged documents or perjured testimony.' " (*Ibid.*)

25

We need not decide whether the Board has authority to set aside its 2010 decision if it determines that the decision was obtained by extrinsic fraud because the Assessor's argument fails regardless. Assuming, arguendo, the Board does have that authority, for the reasons explained below, we conclude that at trial on his traditional mandate claim, the Assessor failed to show that the Board abused its discretion in refusing to set aside its 2010 decision.

In arguing that the Board inadequately considered the Assessor's evidence of extrinsic fraud, the Assessor cites no documents in the administrative record other than the transcript of the 2010 hearing and Schenter's appraisal worksheet received as an exhibit at that hearing. Assuming, arguendo, that Schenter's representations in those documents were erroneous, those documents alone do not address whether Schenter or McNeil, the Assessor's representative who stipulated to the $3.774 million value, knew that the representations were erroneous and intentionally deceived the Board in obtaining its approval of the stipulated value.

The Assessor primarily relies on extra-record evidence, i.e., Schenter's testimony at a preliminary hearing in a separate criminal case against McNeil, Salari, and Noguez. However, the Assessor failed to properly present Schenter's testimony for our consideration on appeal. Although the Assessor asked the trial court to take judicial notice of Schenter's testimony, the trial court did not rule on the request. The Assessor does not argue that the trial court erred by failing to take judicial notice. Nor does he ask this court to take judicial notice of Schenter's testimony, either in his appellate briefs or, as required, in a separate motion. (Cal. Rules of Court, rule 8.252(a)(1).)

26

We decline to take judicial notice of Schenter's testimony on our own motion. As the Assessor acknowledges, Schenter's testimony was given in April 2023—and thus did not exist when the Board made its challenged decision in February 2023. Extra-record evidence that did not exist before the agency made its decision is generally inadmissible in traditional mandamus proceedings (other than those reviewing an agency's ministerial or informal decisions, which are not at issue here). (See *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 578 ["in traditional mandamus proceedings challenging quasi-legislative administrative decisions, . . . [e]xtra-record evidence is admissible . . . only in those rare instances in which (1) the evidence in question existed *before* the agency made its decision, and (2) it was not possible in the exercise of reasonable diligence to present this evidence to the agency *before* the decision was made"]; accord, *Cinema West, LLC v. Baker* (2017) 13 Cal.App.5th 194, 209.)

The Assessor does not argue that Schenter's testimony falls within any exception to the general rule prohibiting consideration of extra-record evidence in traditional mandamus proceedings. Accordingly, we decline to judicially notice Schenter's testimony on our own motion.

In short, we conclude that the Assessor failed to show, at trial on his traditional mandate claim, that the Board abused its discretion by failing to set aside its 2010 decision on the ground of extrinsic fraud. As noted, in *administrative* mandate proceedings, a trial court has broader discretion than in traditional mandate proceedings to consider extra-record evidence that did not exist at the time the agency made its challenged decision. (*Fort Mojave, supra*, 38 Cal.App.4th at pp.

27

1594-1595; Asimow et al., Cal. Practice Guide: Administrative Law, *supra*, ¶¶ 20:42, 20:105, pp. 10, 18.) We express no opinion regarding the admissibility of any evidence of fraud that the Assessor may introduce, by way of a request for judicial notice or otherwise, in the proceedings on his administrative mandate claim on remand.

### 3. The Assessor failed to show that his 2012 redetermination corrected only a nonjudgmental error and was thus exempt from Revenue and Taxation Code section 51.5's four-year deadline.

As an additional ground for concluding that the Board did not abuse its discretion, the trial court concluded that the Assessor's attempt to correct the 2008 base year value was untimely under Revenue and Taxation Code section 51.5.

"An error or an omission [in the determination of a base year value] which involves the exercise of an assessor's *judgment as to value* may be corrected only . . . within four years after July 1 of the assessment year for which the base year value was first established." (Rev. & Tax. Code, § 51.5, subd. (b), italics added.) "Judgmental errors subject to the four-year time limit typically involve a claim the assessor's determination of the base year value failed to reflect the property's fair market value." (*William Jefferson*, *supra*, 228 Cal.App.4th at p. 10.)

"But if the assessor is seeking to reassess the property for reasons 'not involv[ing] the exercise of [the] assessor's judgment as to value,' then there is no time limit and the assessor may 'correct' the error by reassessing the property 'in any assessment year in which the error or omission is discovered.' " (*Prang*, *supra*, 54 Cal.App.5th at p. 13. quoting Rev. & Tax. Code, § 51.5, subd. (a).) "Examples of nonjudgmental error include . . .

incorrectly concluding a change of ownership took place."
(*Harmony Gold U.S.A., Inc. v. County of Los Angeles* (2019) 31
Cal.App.5th 820, 826, citing *Sunrise Retirement Villa v. Dear*
(1997) 58 Cal.App.4th 948, 957 (*Sunrise*).)

Here, the Assessor argued in the trial court that the four-
year deadline for correcting judgmental errors did not apply to
his 2012 redetermination because he corrected *only* a
nonjudgmental error regarding whether the November 2007
transfer was a change of ownership.  He renews that argument
on appeal.  However, as explained below, the Assessor's 2012
redetermination *also* sought to correct the former Assessor's
2010 stipulation that the Property's value as of April 2007 was
$3.7 million.

At the 2010 hearing, the former Assessor (through McNeil)
stipulated to correct the value for the April 2007 purchase to
$3.7 million.  He further stipulated that the $3.7 million value
would apply to both the April 2007 purchase and the November
2007 transfer.  The Board's 2010 decision approved the
stipulation as to both dates.[13]

_____

[13] The Board's 2023 decision rejected the Assessor's
argument that McNeil did not enter a valid stipulation
regarding the April 2007 value.  The Assessor did not renew that
argument in the trial court or in his opening brief on appeal.

In his reply brief, for the first time, the Assessor implies
that McNeil's stipulation is not binding because McNeil
represented the *former* Assessor, or because the requirements
for equitable estoppel are not satisfied.  We conclude that the
Assessor forfeited those issues on this appeal by failing to raise
them in the trial court or in his opening brief.  (See *Natkin v.
California Unemployment Ins. Appeals Bd.* (2013) 219
Cal.App.4th 997, 1011 ["Appellate courts are loath to reverse a

Because the Board's 2010 decision approved the same $3.774 million value for both the April 2007 and November 2007 dates, we disagree with the Assessor's assertion that the Board's 2023 decision upholding the $3.774 million value "depends on an implicit assumption . . . that there was a change in ownership [and resulting reassessment] in November 2007." For the same reason, we disagree with the Assessor's argument that in correcting the $3.774 million value in 2012, he corrected *only* his predecessor's nonjudgmental error in determining that a change of ownership occurred in November 2007.

Rather, the Assessor also sought to correct his predecessor's 2010 stipulation. At the 2014 Board hearing, the Assessor's representative explained: "The Assessor reviewed the propriety of making a [value] change as of April 20th, 2007, de novo, the [Assessor]'s independent discretion, and . . . determined that the value change that Mr. McNeil agreed to as part of that original application is not appropriate and should not be rolled over as to that earlier change in value date [i.e., April 20, 2007]."

Thus, the Assessor sought to correct the April 2007 "value change" that his predecessor stipulated to in 2010. The Assessor does not address whether his predecessor's alleged error in stipulating to the $3.774 million value involved an exercise of his predecessor's judgment as to value. The trial court likewise did

judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider"]; *High Sierra Rural Alliance v. County of Plumas* (2018) 29 Cal.App.5th 102, 111, fn. 2 ["New arguments may not be raised for the first time in an appellant's reply brief"].) The forfeiture of those issues on this appeal does not bar the Assessor from raising them on remand.

not address that issue, which the Assessor did not raise at trial. Instead, the Assessor's sole argument regarding Revenue and Taxation Code section 51.5 was that he corrected only a change-of-ownership determination. Because the trial court properly rejected the argument, the Assessor fails to show that the trial court erred.

We express no opinion regarding whether the former Assessor's alleged error in stipulating to the $3.774 million value involved an exercise of judgment as to value, such that the Assessor's 2012 correction to that error was subject to Revenue and Taxation Code section 51.5's four-year deadline. (Cf. *Sunrise*, *supra*, 58 Cal.App.4th at p. 957 ["In the preamble to the legislation [that enacted Revenue and Taxation Code section 51.5], the Legislature 'finds and declares that fairness and equity require that county assessors have express authority to make corrections to property tax base-year values whenever it is discovered that a base-year value does not reflect applicable constitutional or statutory valuation standards' "].) The trial court may address that issue in the first instance on remand, to the extent the Assessor raises the issue at the trial on his administrative mandate claim.

Our opinion does not foreclose the possibility that the trial court on remand, or the Board on a potential remand from the trial court, may set aside the Board's 2010 decision and, by extension, the former Assessor's 2010 stipulation. Regulations require the Board to act only on "proper evidence" (Cal. Code Regs., tit. 18, §§ 302, subd. (c), 313, subd. (e), 324, subd. (a)) or "properly admitted" evidence (*id.*, § 324, subd. (b)). The Assessor's petition alleges that the Board's 2010 decision violated those regulations because the Board improperly based

the decision on the allegedly comparable sales proffered by Schenter, all of which occurred more than 90 days after the April 2007 purchase and the November 2007 transfer.  (See Rev. & Tax. Code, § 402.5; Cal. Code Regs., tit. 18, § 324, subd. (d).)

In his trial brief and on appeal, the Assessor did not argue that the Board's reliance on those sales rendered its decision a "determination without sufficient evidence" (*Aylward*, *supra*, 31 Cal.2d at p. 839), or that the Board abused its discretion by failing to set aside its 2010 decision on that ground.  We express no opinion regarding those issues, or how Revenue and Taxation Code section 51.5 may apply to any action by the Assessor if the 2010 decision and stipulation are set aside.  To the extent those issues are raised on remand, the trial court may address them in the first instance.

## DISPOSITION

The judgment is affirmed with respect to the Assessor's petition for a writ of traditional mandamus under section 1085. The judgment is reversed with respect to the Assessor's petition for a writ of administrative mandamus under section 1094.5. The matter is remanded to the trial court with directions to hold a trial on the merits of the administrative mandamus petition. The Assessor is entitled to his costs on appeal.

NOT TO BE PUBLISHED


M. KIM, J.

We concur:



ROTHSCHILD, P. J.                    BENDIX, J.


32